ON WRIT OF CERTIORARI

RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Before the Court on certiorari review is an income-tax assessment by the Mississippi State Tax Commission[1] (“the Commission”) against Equifax, Inc., and Equifax Credit Information Services, Inc. (collectively “Equifax”). Using the standard apportionment method prescribed by Commission regulation, Equifax computed its Mississippi taxable income as zero. The Commission then audited Equifax and determined that the standard apportionment method did not fairly reflect Equifax’s business in Mississippi. The Commission employed an alternative apportionment method, under which Equi-fax’s income from services provided to customers located in Mississippi was apportioned to Mississippi, and it issued assessments against Equifax.
¶ 2. After Equifax exhausted its administrative remedies, it petitioned the Hinds County Chancery Court for relief, and it affirmed the Commission’s decision. The Court of Appeals reversed the judgment of the chancery court on standard-of-review and burden-of-proof grounds and found all remaining issues moot. Equifax, Inc. v. Miss. Dep’t of Revenue, — So.3d - (Miss.Ct.App.2012). On writ of certiorari, we hold that the Hinds County Chancery Court did not commit reversible error; that the use of an alternative apportionment method for Equifax was not a promulgation of a rule in violation of the Mississippi Administrative Procedures Act; and that the Commission did not abuse its discretion by imposing penalties against Equifax, as provided for in Mississippi Code Section 27-13-25(3). Accordingly, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Hinds County Chancery Court.
FACTS AND PROCEDURAL HISTORY
¶ 3. The Court of Appeals set forth the following facts and procedural history:
¶ 2. The taxpayers are Equifax, Inc. and Equifax Credit Information Services, Inc. (“ECIS”) (collectively referred to as “Equifax”). Equifax, Inc. is a Georgia corporation in the business of consumer credit reporting. It sells credit information and other services to consumers and businesses across the country. Equifax, Inc. was registered to do business and was in fact doing business in Mississippi. Equifax, Inc. is the parent company of ECIS. The services provided by Equi-fax, Inc[.] and ECIS include: credit reporting, information services, direct mail marketing, risk management, and mortgage loan processing and approval. The primary services provided are credit reports, credit scores, and fraud alerts.
¶ 3. The [Commission] audited Equifax for payment of state income taxes for the period of January 1, 2000, through December 31, 2003 (the “audit period”). *39 During the audit period, Equifax had approximately 800 customers located in Mississippi. The revenue generated from these Mississippi customers was $5,275,406 in 2000, $6,579,281 in 2001, $5,646,283 in 2002,. and $5,178,370 in 2003. Based on these figures, the total gross receipts for the sale of Equifax’s services provided to Mississippi customers during the audit period totaled $22,679,340.
¶4. Equifax did not have a corporate office in Mississippi but employed three Mississippi residents. Equifax’s Mississippi customers requested and received services from Equifax at their Mississippi locations. These transactions primarily occurred electronically and took approximately three seconds from the time the customer requested the credit report or score to the time they received the information.
¶ 5. Equifax timely filed Mississippi state income tax returns for each year in the audit period. However, Equifax reported no taxable income in the State for each of these years and paid no income tax for each year. In computing taxable income, Equifax relied on the [Commission’s] regulations and the standard-apportionment method for service companies. As a result, Equifax determined that it had no income subject to tax in Mississippi.
¶ 6. At the conclusion of the audit, on February 28, 2008, the [Commission] issued assessments against Equifax. The [Commission] determined that the apportionment method used by Equifax did not fairly reflect the extent of Equi-fax’s business in Mississippi. The [Commission] determined Equifax should have used an alternative-apportionment method, a market-based sourcing method, during the audit period.
¶ 7. Equifax disagreed with the assessments and appealed the assessments to the Mississippi Tax Commission Board of Review (the “Board”). The Board upheld the assessments in a reduced amount. Equifax then appealed to the three-member Tax Commission, which upheld the Board’s reduced assessments.
¶ 8. On May 29, 2009, Equifax paid the assessments, under protest, including interest and penalties. Equifax, Inc.’s assessments totaled $467,836; and ECIS’s assessments totaled $271,201.
¶ 9. On June 1, 2009, pursuant to Mississippi Code Annotated section 27-77-7 (Rev. 2008), Equifax appealed the assessment to the Hinds County Chancery Court. [The chancellor] held an eviden-tiary hearing on all issues presented. The chancellor then entered an order and final judgment, dated October 26, 2010, affirming the [Commission’s] assessments.
Equifax, — So.3d at -. In its Complaint and Petition, Equifax sought judicial review of the decision of the Tax Commission. Equifax averred that the Commission’s use of the alternative apportionment method was not authorized by Mississippi law and violated Equifax’s rights under the United States Constitution. Equifax and the Commission filed a stipulation of agreed-upon facts.[2] At trial, Equifax was burdened to prove its entitlement to relief — that the Commission’s decision was reversible — by a preponderance of the evidence. The chancellor concluded that Equifax had failed to meet its burden to prove that the Commission’s use of an alternative apportionment method violated *40 the Mississippi Administrative Procedures Act, that its imposition of penalties against Equifax was arbitrary and capricious, or that Equifax’s rights under the United States Constitution had been violated. The court further found that it could not substitute its “judgment for the agency’s unless the latter’s interpretation is arbitrary or unreasonable.” It further found, in the limited record presented, including the agreed-upon facts, that the Commission orders were premised on substantial evidence.
¶ 4. Equifax appealed the decision of the Hinds County Chancery Court to the Court of Appeals. The Court of Appeals found that: (1) a de novo standard applies to judicial review of Commission decisions; and, (2) as the party invoking alternate apportionment, the Commission has the burden to prove that the standard apportionment method is not a fair representation of the taxpayer’s activity in the state and that its chosen alternative method is reasonable. Equifax, — So.3d at -. The Court of Appeals recognized that the arbitrary-and-eapricious standard normally applies to agency decisions, but opined that “[t]his is not the normal case. The Legislature has established a different standard that ... applies here.” Id. at -. The Court of Appeals examined Mississippi Code Section 27-77-7(4) and found that “[tjhis case seems to create a conflict as to exactly what a trial de novo means in an appeal from a [Commission] decision.” Id. at -. Quoting the general understanding that “[a] de novo review ‘means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken[,]’ ” the Court of Appeals concluded that “the chancery court’s review of the [Commission’s] decision should have been conducted just as if the chancery court were sitting as the [Commission].” Id. (citing California Co. v. State Oil & Gas Bd., 200 Miss. 824, 838-39, 27 So.2d 542, 544 (1946) (citation omitted)). Concluding that the chancellor had erred both by applying an incorrect standard of review and by imposing the burden of proof on the wrong party, the Court of Appeals reversed the chancellor’s decision and remanded the case to the Hinds County Chancery Court. Id. at -. As it reversed and remanded on these two issues, the Court of Appeals found all other issues raised on appeal moot. Id.
ISSUES
¶ 5. This Court granted certiorari to address the following issues:
1. Whether the chancellor committed reversible error by applying an arbitrary-and-capricious standard when reviewing a decision of the Mississippi State Tax Commission under Section 27-77-7(4).
2. Whether the chancellor committed reversible error by requiring Equifax to carry its burden of proof of establishing that the Commission’s decision was reversible.
¶ 6. Declining to reverse the chancellor’s judgment on the grounds of standard of review or burden of proof, we also address the following additional issues raised by Equifax:
3. Whether the chancellor manifestly erred by concluding that the Commission’s use of an alternative apportionment method for Equifax’s income was not a promulgation of a new rule in violation of the Mississippi Administrative Procedures Act.
4. Whether the chancellor manifestly erred by declining to abate penalties imposed by the Commission under Section 27-13-25(3).
*41 DISCUSSION
¶ 7. The proper standard of review and burden of proof for an appeal to chancery court of a judgment of the Commission are questions of law dictated by Mississippi statute. Miss.Code Ann. § 27-77-7(4) (2005) (amended 2009). This Court reviews questions of law de novo. Hankins v. Md. Cas. Co./Zurich Am. Ins. Co., 101 So.3d 645, 652 (Miss.2012) (citation omitted).
¶ 8. All agree that the applicable standard of review and burden of proof in chancery court for judicial review of a Commission decision are found in Mississippi Code Section 27-77-7(4), but much disagreement arises over the practical application of that language. The relevant portion of Section 27-77-7(4) reads as follows:
the chancery court shall give deference to the decision and interpretation of law and regulations by the commission as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised. Based on the evidence presented at the hearing, the chancery court shall determine whether the taxpayer has proven, by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.
Miss.Code Ann. § 27-77-7(4) (2005) (amended 2009) (emphasis added). We hold that, under this language, the chancery court must hold a judicial hearing to determine whether the taxpayer challenging the Commission decision can prove entitlement to any or all of the relief requested by a preponderance of the evidence.[3] In this case, the evidence to be considered by the chancellor was the record from the Commission, including the agreed-upon facts. As in other appeals of administrative-agency decisions, to be entitled to reversal of the agency decision, a petitioner must raise and prove one or more of the following: the agency’s decision was unsupported by substantial evidence, the agency’s decision was arbitrary and capricious, the agency’s decision was beyond the power of the administrative agency to make, and/or the agency’s decision violated the complaining party’s statutory or constitutional right. Buffington v. Miss. State Tax Comm’n, 43 So.3d 450, 453-54 (Miss.2010). The court does not adjudicate the wisdom/sageness of the agency’s decision, but rather is limited to examining the legality of the decision. To resolve any confusion surrounding Section 27-77-7(4), we address the pertinent provisions.
¶ 9. First, the chancery court “shall give deference to the decision and interpretation of law and regulations by the commission as it does with the decisions and interpretation of any administrative agency.” Miss.Code Ann. § 27-77-7(4) (2005). Courts accord great deference to decisions of administrative agencies; a judgment of an administrative agency is binding unless a party proves otherwise. See CLC of Biloxi, LLC v. Miss. Dep’t of Health, 91 So.3d 633, 635 (Miss.2012) (“A rebuttable presumption exists in favor of the [agency’s] decision, and the burden lies with the challenging party to prove the contrary.”) (citation omitted). Accordingly, a court will reverse the decision of an administrative agency only if the presumption is overcome, as addressed in Buffing *42 ton, supra. The statute clearly mandates deference for Commission decisions, as for decisions of any administrative agency. These specific bases for reversal apply in appeals of Commission decisions just as they do in appeals of other administrative agencies’ decisions.
¶ 10. Equifax’s complaint in chancery court sought judicial review of the merits of the Commission’s decision, a determination which clearly was outside of the chancery court’s authority. Equifax also averred that: (1) the Commission’s use of alternative apportionment was not authorized by Mississippi law, because the Commission failed to prove, under its own regulations, that standard allocation did not fairly represent Equifax’s business activity in Mississippi and that the alternative method was reasonable; and (2) the Commission’s decision violated Equifax’s rights under the Due Process and Commerce Clauses of the federal Constitution. The chancellor properly limited his analysis to determining whether Equifax had proven that it was entitled to reversal of the Commission’s decision for any of the prescribed legal bases for reversing an agency decision provided by this Court in Buffington.
¶ 11. Section 27-77-7(4) next provides that the chancery court “shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised.” We emphasize that the subject of the eviden-tiary hearing is the issues raised on appeal in chancery court — whether the decision was made in violation of the tenets announced in Buffington — not the wisdom/sageness of the underlying decision by the Commission. The chancery court had before it the orders of the Commission and the Board of Review, including agreed findings of fact. Under Section 27-77-7(4), Equifax had the opportunity to present evidence contesting the legality of the Commission’s and the Board of Review’s decisions.
¶ 12. Perhaps the confusion surrounding Section 27-77-7(4) stems from the statute’s instruction to the chancery court to “try the ease de novo.” Black’s Law Dictionary defines “de novo” as “anew.” Black’s Law Dictionary 500 (9th ed. 2009). “Anew” means “[a] second time as a new trial or action, over again, afresh, once more.” I The Oxford English Dictionary 457 (2d ed. 1989). “A trial de novo, within the common acceptation of that term ... means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken.” California Co. v. State Oil and Gas Bd., 200 Miss. 824, 838-39, 27 So.2d 542, 544 (1946) (emphasis added). The hearing in chancery court is the first hearing conducted by a judicial tribunal to test the legality of the decision. The proceedings before the Commission are informal, nonjudicial proceedings that are neither conducted under oath nor preserved in the record for appeal. The chancery-court proceedings mark the first time a taxpayer may judicially challenge the legality of the Commission’s final decision. In the absence of a prior proceeding, no trial anew can occur. Thus, the instruction to “try the case de novo” is misdirected. Section 27-77-7(4) provides a judicial forum to try anew (or for the first time) the legal issues raised by the taxpayer in chancery court. Its limited purpose is only to examine whether the Commission’s decision was supported by substantial evidence, was not arbitrary and capricious, was within the Commission’s power to make, and did not violate the taxpayer’s statutory or constitutional rights.
¶ 13. Finally, Section 27-77-7(4) establishes the burden of proof and *43 upon whom the burden rests. “Based on the evidence presented at the hearing, the .chancery court shall determine whether the taxpayer has proven, by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.” Miss.Code Ann. § 27-77-7(4) (2005) (emphasis added). This sentence stands for the simple proposition that, in a taxpayer’s action in chancery court appealing a final judgment of the Commission, as in all other judicial proceedings, the party petitioning the court for relief bears the burden of proving its claims by a preponderance of the evidence or a higher standard, if required by the issues raised.[4]
¶ 14. In this case, under Section 27-77-7(4), the chancery court conducted a hearing to determine whether Equifax (the taxpayer) was able to prove, by the appropriate burden, that the decision was arbitrary and capricious, beyond the Commission’s power, and/or violated Equifax’s statutory or constitutional right. At the hearing in chancery court, the parties were given the opportunity to present such evidence and legal authority as they deemed appropriate to the limited issues being tried, i.e., the legality of the decision. In this case, the chancery court determined that Equifax had failed to prove that the agency’s decision violated one or more of the Buffington tenets.
¶ 15. The chancellor in the case sub judice did just that, finding that his “review of the Order of the [Commission] must be only to determine whether or not the order ‘(1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party’ ” and that “Equifax clearly bears the burden of proving, by a preponderance of the evidence, that the decision of the [Commission] is reversible .... ” Thus, the chancery court applied the proper standard of review and burden of proof.
¶ 16. It follows that the Court of Appeals erred by reversing the chancellor’s judgment on standard-of-review and burden-of-proof grounds. For the reasons discussed above, the Court of Appeals erroneously construed Section 27-77-7(4) as imposing a de-novo standard of review, such that “the chancery court’s review of the [Commission’s] decision should have been conducted just as if the chancery court were sitting as the [Commission].”[5] Equifax, — So.3d at -. The Court of Appeals further erred by holding that the Commission — rather than the taxpayer-petitioner, Equifax — had the burden of proof, based on cases from other jurisdictions interpreting the Uniform Division of Income for Tax Purposes Act (“UDIT-PA”).[6] Equifax, — So.3d at -. Sec *44 tion 27-77-7(4) clearly places the burden on the taxpayer challenging a decision of the Commission to prove its entitlement to relief, just as petitioners in other judicial proceedings bear the burden of proving their claims. We will not impose a burden on the Commission, in contradiction of the Legislature’s explicit placement of the burden on the taxpayer, on the basis that courts in states whose legislatures have adopted the UDITPA as law have done so. We conclude that the Court of Appeals erred by reversing the chancellor’s judgment requiring Equifax to carry the burden of proving that the Commission’s decision was unsupported by substantial evidence, arbitrary and capricious, beyond the power of the Commission, or in violation of a statutory or constitutional right of Equifax.
¶ 17. Reversing the chancellor’s judgment on standard-of-review and burden-of-proof grounds, the Court of Appeals found the remaining issues raised by Equifax moot. As we hold that the chancellor properly interpreted the applicable standard of review and burden of proof under Section 27-77-7(4), we do not reverse on those grounds. Accordingly, we examine Equifax’s remaining claims of error.
¶ 18. Equifax argues that the chancellor erred by finding that the use of an alternative apportionment method was not a promulgation of a new rule in violation of the Mississippi Administrative Procedures Act and that the imposition of penalties under Mississippi Code Section 27-18-25(3) was not arbitrary and capricious. These are factual determinations, and “[w]e review the chancellor’s factual determinations applying a manifest-error standard.” W.C. Fore v. Miss. Dep’t of Revenue, 90 So.3d 572, 578 (Miss.2012) (citation omitted). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Long Meadow Homeowners' Ass’n, Inc. v. Harland, 89 So.3d 573, 577 (Miss.2012) (citation omitted).
1Í.19. We hold that the chancellor did not manifestly err by finding that the Commission’s requirement of an alternative apportionment method for Equifax’s income did not amount to a rule, unduly promulgated in violation of the Mississippi *45 Administrative Procedures Act.[7] Equifax argues that the Commission promulgated a new rule for all service companies when it required Equifax to use an alternative apportionment method, because the Commission did “not rely upon a single fact unique to Equifax’s situation in support of invoking alternative apportionment!;,]” but premised its requirement of alternative apportionment “solely on the fact that Equi-fax is a service company and makes sales to customers located in Mississippi.” We disagree. Equifax presented no evidence that the Commission promulgated a new standard apportionment method for all service companies. Rather, the Commission required Equifax to use an alternative apportionment method under an existing rule, which provides that, “[i]f the [standard] allocation and apportionment provisions do not fairly represent the extent of the taxpayer’s business activity in this state, ... the Commissioner may require ... [t]he employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer’s income.” Miss. Admin. Code 35-III-8.06-402.10. This language clearly provides for the Commission to require alternative apportionment where the standard allocation of income does not fairly represent a taxpayer’s activity in the state — such as Equifax’s allocation of zero income to Mississippi, despite having employees in the state and receiving $22,679,340 for services provided to customers in Mississippi during the audit period. The Commission’s judgment requiring Equifax to use an alternative apportionment method did not bind other service companies to the alternative apportionment method imposed on Equifax or alter the standard apportionment method prescribed by Commission regulation. We agree with the chancellor’s conclusion that the Commission “utilized an existing alternative method as prescribed under an existing rule. Therefore, no new promulgation of a rule occurred.”
¶ 20. We likewise hold that the chancellor did not commit manifest error by concluding that Equifax had failed to prove that the Commission’s imposition of penalties pursuant to Mississippi Code Section 27-13-25(3) (2005) (amended 2009) warranted reversal. Section 27-13-25 provided additional penalties to be imposed “[i]n case of failure to pay any additional taxes as assessed under this section, unless it is shown that the failure is due to reasonable cause and not due to willful neglect .... ” Miss.Code Ann. § 27-13-25(3) (emphasis added). Equifax argues that the chancellor is vested with authority to reverse the imposition of penalties because it disagreed with the Commission’s decision-reiterating its argument that the chancery court is to apply a de novo standard of review to appeals of Commission decisions. We disagree. The chancellor properly found as follows:
this Court cannot find that the imposition of penalties is unsupported by substantial evidence, arbitrary or capricious, beyond the power of the [Commission], or violative of some statutory or constitutional right of Equifax. This Court cannot abate penalties based solely upon its disagreement with the [Commission’s] finding as to whether Equifax acted reasonably and without willful neglect.
*46 The chancellor was correct that he could not reverse the Commission’s decision to impose penalties solely because he would have found differently than the Commission; rather, he could reverse only if Equi-fax proved that the imposition of penalties was unsupported by substantial evidence presented to the Commission, arbitrary and capricious, beyond the power of the Commission, or in violation of Equifax’s statutory or constitutional rights — which the chancellor found Equifax had failed to do. As the chancellor pointed out in his order, it was clear that “the lack of any taxable income attributable to the State of Mississippi is not a fair assessment of Equifax’s income earned within the state.” We find that the chancellor did not commit manifest error by concluding that Equifax failed to prove that it was entitled to reversal of the Commission’s imposition of penalties. Accordingly, we conclude that the chancellor did not err by affirming the Commission’s decision, based on the evidence presented at the evidentiary hearing.
CONCLUSION
¶ 21. For the reasons discussed above, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Hinds County Chancery Court affirming the Mississippi State Tax Commission’s use of an alternative apportionment method and assessment of income taxes and penalties against Equifax.
¶ 22. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.
WALLER, C.J., DICKINSON, P.J., KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.

. Since the events underlying this appeal occurred, the "Mississippi State Tax Commission” has been renamed the "Mississippi Department of Revenue.” Miss.Code Ann. § 27-3-4 (Rev. 2010). In the interest of consistency, this opinion uses the term "Commission.”

. No claim was made that the Commission’s decision was unsupported by the agreed-upon facts. Rather, Equifax claimed that the Corn-mission improperly applied regulations and laws in an impermissible manner.

. Or a higher standard, if required by the issues raised. Miss.Code Ann. § 27-77-7(4) (2005).

. For example, a taxpayer claiming that a Commission decision was the result of fraud must carry the higher burden of proving his claim by clear and convincing evidence. See O.W.O. Investments, Inc. v. Stone Inv. Co., 32 So.3d 439, 446 (Miss.2010) ("these elements [of fraud] must be proven by clear and convincing evidence” (citation omitted)).

. In W.C. Fore v. Mississippi Department of Revenue, 90 So.3d 572 (Miss.2012), this Court held that Section 27-77-7(4) “clearly requires the chancellor to be the trier of fact on appeal.” Fore, 90 So.3d at 578. We now clarify that the chancellor is the trier of facts related to the taxpayer's claim(s) on appeal, i.e., whether the Commission's decision was unsupported by substantial evidence, arbitrary and capricious, beyond the power of the Commission, or in violation of a statutory or constitutional right of the taxpayer.

.Commission regulations include the following UDITPA language:
402.10 Other Provisions. If the allocation and apportionment provisions of this Regulation do not fairly represent the extent of *44 the taxpayer's business activity in this state, the taxpayer may petition for, or the Commissioner may require, in respect to all or any part of the taxpayer’s business activity, if reasonable:
1. Separate accounting:
2. The exclusion of any one of the factors;
3. The inclusion of one or more additional factors which will fairly represent the taxpayer’s business activity in this state; or
4. The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer’s income.
Miss. Admin. Code 35 — III—8.06 (2011) (emphasis added). The Court of Appeals is correct that courts in jurisdictions where the UDITPA has been adopted statutorily have interpreted this language as requiring the party invoking alternative apportionment to prove that the standard apportionment method does not fairly represent the taxpayer’s business in the state and that the chosen alternative is reasonable. Equifax, - So.3d at — (citing Microsoft Corp. v. Franchise Tax Board, 39 Cal.4th 750, 47 Cal.Rptr.3d 216, 139 P.3d 1169, 1178 (2006); Am. Tel. & Tel. Co. v. Huddleston, 880 S.W.2d 682, 691 (Tenn.Ct.App.1994); and Deseret Pharm. Co. v. State Tax Comm'n, 579 P.2d 1322, 1326 (Utah 1978)). However, those decisions do not inform our decision, for the Mississippi Legislature has not adopted the UDITPA as law; in Mississippi, this UDITPA language appears in an administrative regulation adopted by the Commission, and the Mississippi Legislature has specifically provided that the taxpayer bears the burden of proof in appeals of Commission decisions.

. Under the Mississippi Administrative Procedures Act, an agency must observe certain procedures prior to promulgating a new rule, including considering and composing a written report on the economic impact and benefits of the rule, filing notice with the Secretary of State at least twenty-five days before adopting the rule, and, if requested by a political subdivision, agency, or at least ten persons, holding an oral hearing. Miss.Code Ann. §§ 25-43-3.101 to 25-43-3.114 (Rev. 2010).