# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2019

Lyle W. Cayce
Clerk

No. 18-60608

_____

LIBERTY MUTUAL FIRE INSURANCE COMPANY, as subrogee of
Chickasaw County School District,

> Plaintiff - Appellee

v.

FOWLKES PLUMBING, L.L.C.; SULLIVAN ENTERPRISES,
INCORPORATED; QUALITY HEAT ; AIR, INCORPORATED,

> Defendants - Appellants

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:

We allowed this interlocutory appeal that asks how the Supreme Court of Mississippi would interpret the subrogation waiver in a common form contracting agreement. The question has split courts nationwide. Because of the closeness and importance of this question, we certify again, this time to the state supreme court so that it can answer the difficult question for itself.

## I.

This insurance dispute resulted from a fire that destroyed a small-town school. Chickasaw County School District needed to restore the windows at one of its schools over the summer break, so its school board entered into a

contract with Sullivan Enterprises. The agreement was memorialized in the board's minutes as follows:

> Motion to accept the bid from Sullivan Enterprises, Inc. for the 1935 Window Restoration Project based on Mr. Hood reviewing the bid documents, reviewing the contracts, and checking the credentials of the company was made by Mr. Collums and seconded by Ms. Butler. Four approved, and one abstained. . . . The motion passed.

During the work on the windows, a fire broke out that destroyed the entire school. The school district had previously obtained a Liberty Mutual insurance policy that covered fire damage. Liberty Mutual paid $4.3 million after the fire.

Liberty Mutual then brought a subrogation claim against Sullivan and two subcontractors claiming that they negligently caused the fire. The district court bifurcated the case, so that it could first determine whether there was a waiver of subrogation in the contract between the school district and Sullivan, and only then (if still relevant) determine who was at fault for the fire. This stage of the case is only about the subrogation waiver.

The subrogation controversy centers around the meaning of American Institute of Architects Document A201-2007, a widely-used form contract that was part of the district's contracting agreement with Sullivan.[1] The key provision is section 11.3.7; the district court correctly noted that a deep division exists about how to interpret this provision's subrogation waiver. It opted for the minority view and then certified an interlocutory appeal, which we accepted.

---

[1] American Institute of Architects documents are commercial form contracts used in owner-contractor agreements. The AIA document in question, AIA Document A201-2007, is titled "General Conditions of the Contract for Construction."

No. 18-60608

II.

Before we can interpret the waiver language—or ask the state supreme court to do so—we must determine whether a valid contract even existed between the school board and Sullivan. If not, interpreting A201-2007 would be a moot point. Though the two sides signed an agreement, there is some question regarding its validity. Mississippi strictly enforces a rule that public boards can only speak through their minutes. *KPMG, LLP v. Singing River Health Sys.*, --- So. 3d ---, 2018 WL 5291088, \*5 (Miss. 2018);[2] *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290–91 (Miss. 2015); *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977). The minutes must contain enough of the contract for the court to evaluate its terms. *Wellness*, 178 So. 3d at 1291. The onerous duty falls on the contracting party—not the school board—to make sure the contract is in the minutes. *Id.* at 1293.

The school board minutes may fall far short of this requirement. They cite no contractual provisions, only reciting that a bid was accepted. But we do not have to decide the minutes question as Liberty Mutual forfeited this claim by not advancing it in the district court. *See Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, 905 F.3d 915, 920 n.3 (5th Cir. 2018). The closest Liberty Mutual came to arguing contractual invalidity was in its opposition to summary judgment, when it discussed the school board's requirement to approve the project and then questioned whether A201-2007 was part of the contract that the school board approved. But that discussion never mentions the minutes rule or Mississippi cases applying it. Instead, it argued only that

---

[2] As of the date of this opinion, *KPMG* has not been released for publication and could still be revised or withdrawn by the Supreme Court of Mississippi. It is thus not yet precedential. KPMG has also filed a petition for certiorari with the Supreme Court of the United States. No. 18-1308 (filed April 10, 2019).

the school board was unaware of these conditions. Because Liberty Mutual has forfeited its argument, we treat the contract as a valid one.

## III.

We thus turn to interpreting the contract between Sullivan and the district. Doing so requires making our way through several provisions of A201-2007, particularly "Article 11 Insurance and Bonds." Section 11.3.1 requires that "the Owner," here the school board, "shall purchase and maintain . . . property insurance . . . comprising the total value for the entire Project at the site . . . " The school board met its requirement by maintaining its preexisting policy with Liberty Mutual.

Then another provision, subsection 11.3.5 states that:

> If during the Project construction period the Owner insures properties . . . at or adjacent to the site by property insurance under policies separate from those insuring the Project . . . the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire. . .

The importance of this provision is debated and we think misunderstood by the parties, as we will explain shortly.

Finally and most crucially, Section 11.3.7's waiver of subrogation provision requires that:

> The Owner and Contractor waive all rights against [ ] each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damage caused by fire . . . to the extent covered by property insurance obtained pursuant to this Section 11.3 or any other property insurance applicable to the Work. . .

The contract elsewhere defines Work as "the construction and services required by the Contract Documents, whether completed or partially completed. . . ."

The contractors argue that Section 11.3.5 provides a complete waiver of subrogation. But their argument ignores that this waiver is only "in

accordance with the terms of Section 11.3.7;" it is the later provision that governs the interpretation. More importantly, the contract between the school board and Sullivan never triggered Section 11.3.5. That section requires an insurance policy "separate from those insuring the Project." The Liberty Mutual policy insured the Project, and the school board did not obtain additional insurance policies for properties at or adjacent to the window restoration project. Section 11.3.5 thus is not directly implicated and cannot provide its own waiver of subrogation, though of course it may shed light on the meaning of Section 11.3.7. *See Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005) ("When construing a contract, we will read the contract as a *whole,* so as to give effect to all of its clauses.")

So the district court correctly viewed Section 11.3.7 as the ultimate inquiry. This common provision generates more than its fair share of litigation. Courts have interpreted the waiver in two ways. The somewhat more popular interpretation looks to the source of the insurance proceeds. If the insurance bought or maintained under Section 11.3.1 covered the damage, then the waiver reaches the full extent of that insurance coverage. *See Commercial Union Ins. v. Bituminous Cas. Corp.*, 851 F.2d 98, 101–02 (3d Cir. 1988); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 105 (2d Cir. 1986); *Bd. Of Comm'rs of Cty. of Jefferson v. Teton Corp.*, 30 N.E.3d 711, 713 (Ind. 2015); *Lexington Ins. Co. v. Entrex Communication Services, Inc.*, 749 N.W.2d 124 (Neb. 2008); *Emp'rs Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn. 1998); *Trinity Universal Ins. Co. v. Bill Cox Const., Inc.*, 75 S.W.3d 6, 13–14 (Tex. App.—San Antonio 2001, no pet.). Perhaps the leading case for this approach is from Nebraska. *See Lexington Ins.,* 749 N.W.2d at 124. Under this majority approach, the contractors' subrogation waiver would cover all the damage, barring Liberty Mutual's subrogation claims.

No. 18-60608

But Liberty Mutual's claims would go forward under the minority approach, which considers what type of property was damaged, only waiving subrogation for damage to Work property. *See Copper Mountain. Inc. v. Indus. Sys., Inc.*, 208 P.3d 692 (Colo. 2009) (en banc); *see also Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 22 (Mo. 1995) (en banc)*; S.S.D.W. Co. v. Brisk Waterproofing Co.*, 556 N.E.2d 1097, 1100 (N.Y. 1990); *Pub. Emp. Mut. Ins. Co. v. Sellen Constr. Co., Inc.*, 740 P.2d 913, 916 (Wash. Ct. App. 1987). The Supreme Court of Colorado's decision is the most recent on this side of the split. *See Copper Mountain*, 208 P.3d at 692. The district court adopted this view, ruling that the subrogation waiver only covered the damage to the window project.

No Mississippi state court has taken a side in this deep and longstanding split.[3] *See Copper Mountain*, 208 P.3d at 697–98; *id.* at 701 (Martinez, J., dissenting) (collecting ten cases supporting the majority rule and seven for the minority). The closeness of the question counsels in favor of certification to the state supreme court. *See State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir. 1976) (noting closeness of the question as one of the most important certification factors). So does the fact that this is not a one-off issue. The AIA form contracts are used widely, and uncertainty about this provision has generated much litigation. That is contrary to the goal of subrogation waivers, which are meant to prevent litigation. A definitive answer from the state court will reduce future disputes by parties to contracting agreements that contain this type of subrogation waiver.

---

[3] The district court adopted the minority approach based in part on a Southern District of Mississippi opinion that we affirmed in a nonprecedential decision. *See Fidelity & Guar. Ins. Co. v. Craig-Wilkinson, Inc.*, 948 F. Supp. 608 (S.D. Miss. 1996), *aff'd*, 101 F.3d 699 (5th Cir. 1996). That unpublished federal decision does not offer much help for the *Erie* guess we would have to make.

No. 18-60608

We therefore certify the following question:

Is the waiver of subrogation between the school district and Sullivan limited to damages to the Work or does it also apply to damages to non-Work property?

\* \* \*

We CERTIFY the previously stated question and direct the Clerk's Office to forward this opinion, as well as the record and appellate briefs, to the Supreme Court of Mississippi to determine whether to accept the certification. We disclaim any intention or desire that the Supreme Court confine its reply to the precise form or scope of the question certified. The panel retains cognizance of the appeal in this case pending response from the Supreme Court of Mississippi.



**A True Copy**
**Certified order issued Aug 12, 2019**

*Tyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**