# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-FC-01285-SCT

*LIBERTY MUTUAL FIRE INSURANCE*     PLAINTIFF – APPELLEE
*COMPANY, AS SUBROGEE OF CHICKASAW*
*COUNTY SCHOOL DISTRICT*

*v.*

*FOWLKES PLUMBING, L.L.C., SULLIVAN*     DEFENDANTS – APPELLANTS
*ENTERPRISES, INCORPORATED, AND*
*QUALITY HEAT AND AIR, INCORPORATED*


| | |
|---|---|
| ATTORNEYS FOR DEFENDANTS – APPELLANTS: | RICHARD T. LAWRENCE<br>MICHAEL O. GWIN<br>BRIAN A. HINTON<br>THOMAS M. WRIGHT<br>SAMUEL C. KELLY<br>R. LANE BOBO<br>MARC A. BIGGERS<br>STEVEN C. COOKSTON |
| ATTORNEYS FOR PLAINTIFF – APPELLEE: | JAY M. GOLDSTEIN<br>ALBERT S. NALIBOTSKY<br>LANA E. GILLON |
| NATURE OF THE CASE: | CIVIL - FEDERALLY<br>CERTIFIED QUESTION |
| DISPOSITION: | CERTIFIED QUESTION<br>ANSWERED - 02/20/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. In July 2015, fire destroyed the Houlka Attendance Center in Chickasaw County while the school was undergoing renovations. Litigation ensued. The United States District Court for the Northern District of Mississippi found that the waiver of subrogation in the case *sub*

*judice* applied only to damages to the "work" property. ***Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC***, No. 1:17-cv-010-GHD-DAS, 2018 WL 842169, at *7 (N.D. Miss. Feb. 12, 2018). The court allowed Liberty Mutual to proceed in litigation for damages to the "non-work" property. ***Id.*** The United States Court of Appeals for the Fifth Circuit allowed an interlocutory appeal, certifying the following question to Supreme Court of Mississippi: "[i]s the waiver of subrogation between the school district and Sullivan limited to damages to the Work or does it also apply to damages to non-Work property?" ***Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC***, 934 F.3d 424, 428 (5th Cir. 2019).

## FACTS AND PROCEDURAL HISTORY

¶2. In May 2015, the Chickasaw County School District entered into a contract with Sullivan Enterprises, Inc., for window restoration work on the Houlka Attendance Center. In July 2015, during construction, a fire began that completely consumed the attendance center. Liberty Mutual, the school district's insurer, paid the school district $4.3 million for the damage to the building. Liberty Mutual then filed a subrogation suit against Sullivan Enterprises, Fowlkes Plumbing, LLC, and Quality Heat & Air, Inc. The United States District Court for the Northern District of Mississippi found that the waiver of subrogation did not apply to damages to the "non-Work" property, thus Liberty Mutual could proceed in litigation as to "non-Work" property damages. ***Fowlkes Plumbing, LLC***, 2018 WL 842169, at *7. The United States Court of Appeals for the Fifth Circuit allowed an interlocutory appeal and certified the question of whether the subrogation waiver applies to "non-Work" property to the Supreme Court of Mississippi. ***Fowlkes Plumbing, LLC***, 934 F.3d at 428.

**STANDARD OF REVIEW**

¶3.     "This Court reviews questions of law de novo." ***Equifax, Inc. v. Miss. Dep't of Revenue***, 125 So. 3d 36, 41 (¶ 7) (Miss. 2013) (citing ***Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.***, 101 So. 3d 645, 652 (¶ 15) (Miss. 2012)). Additionally, "A de novo standard of review is applied to questions of contract construction." ***Epperson v. SOUTHBank***, 93 So. 3d 10, 16 (¶ 16) (Miss. 2012) (citing ***A & F Props., LLC v. Madison Cty. Bd. of Supervisors***, 933 So. 2d 296, 301 (¶ 11) (Miss. 2006)).

**DISCUSSION**

¶4.     The question certified by the Fifth Circuit is an issue of first impression in Mississippi. The certified question has split courts across the nation, and two opposite approaches have developed. The question calls for an interpretation of several contractual provisions in the American Institute of Architects (AIA) form A201-2007. The provisions that are the subject of the dispute include the following, subparagraphs 11.3.7 and 11.3.5 respectively. Subparagraph 11.3.7 states,

> The Owner and Contractor waive all rights against . . . each other and any of their subcontractors . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary.

Subparagraph 11.3.5 states,

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, . . . the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance.

¶5. When interpreting a contract, the court must first determine if the contract is ambiguous. *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶ 17) (Miss. 2012) (citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (¶ 10) (Miss. 2003)). "If the contract is unambiguous, 'the intention of the contracting parties should be gleaned solely from the wording of the contract[.]'" *Epperson*, 93 So. 3d at 16 (¶ 17) (quoting *Turner v. Terry*, 799 So. 2d 25, 32 (¶ 16) (Miss. 2001)). "This Court must 'accept the plain meaning of a contract as the intent of the parties where no ambiguity exists.'" *Epperson*, 93 So. 3d at 16 (¶ 17) (quoting *A & F Props., LLC v. Madison Cty. Bd. of Supervisors*, 933 So. 2d 296, 301 (¶ 12) (Miss. 2006)).

¶6. While the issue in the case *sub judice* is an issue of first impression in Mississippi, the Court does have some guidance. The issue has split courts, and two opposite approaches have developed. The majority approach seeks to determine the source of the insurance proceeds. "[I]f the proceeds were paid from a policy provided . . . pursuant to" the contract, then all damages, including "Work" and "non-Work" property, "are covered by the waiver." *Fowlkes Plumbing, LLC*, 2018 WL 842169, at *6. The minority approach considers the type of property that was damaged. Under the minority approach, "damages to 'Work' property are covered by the waiver and damages to 'non-Work' property are not." *Id.*

¶7. However, the Court does not need to look for guidance elsewhere, because the language of the contract in the case *sub judice* is unambiguous. Subparagraph 11.3.7, titled "Waiver of Subrogation," operates as a blanket waiver of property damage to the extent the property is covered by insurance. The provision makes clear that the owner, contractor, and

4

subcontractors waive all rights against each other for damages caused by fire to the extent the property is covered by insurance "obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." The phrase "to the extent the property is covered by insurance" means that any damage that is paid for by insurance proceeds is covered. Additionally, the phrase "applicable to the work" means any insurance that insures the work, which is not a limit on recovery for only damages to work property, as the minority courts argue. In *ASIC II Ltd. v. Stonhard, Inc.*, the United States District Court for the District of Maine held,

> If the property insurance actually procured covers more than just the location of a particular contractor's own work, the waiver of subrogation must still be effective as to all fire damages covered by insurance, not just fire damage to the "Work" itself. NSC chose not to obtain separate insurance (*i.e.*, "property insurance obtained pursuant to this Subparagraph") but instead, relied on its existing policy (*i.e.*, "other property insurance applicable to the Work"). The preexisting IRI insurance was the insurance that NSC chose to provide to comply with [11.3] even though that policy may have been more extensive than what was required. The waiver clause does not restrict the waiver of damages to "Work" but to the proceeds of any insurance provided under [11.3].

*ASIC II Ltd. v. Stonhard, Inc.*, 63 F. Supp. 2d 85, 92 (D. Me. 1999).

¶8.     If subparagraph 11.3.5 is interpreted using the minority approach, the waiver is effective when two separate polices were purchased, one covering the work and one covering the non-work property. However, if there is a preexisting insurance that covers both work and non-work property, according to the minority there would not be an effective waiver of damages as to the non-work property. The logical fallacy in the minority's argument is pointed out by the Nebraska Supreme Court:

5

Subparagraph [11.3.5] reinforces our conclusion that the waiver in subparagraph [11.3.7] applies to all damages—including Work and non-Work damages—covered by the owner's property insurance policy. An example is helpful. Suppose the owner purchased two separate property insurance policies: "Policy A" that covered only the Project (Work) and "Policy B" that covered only the non-Work property. Under subparagraph [11.3.7], the owner waives subrogation rights as to any damages covered by Policy A (damages to the Work property). Under subparagraph [11.3.5], the owner waives subrogation rights as to any damages covered by the separate Policy B (damages to the non-Work property). So, applying subparagraphs [11.3.5] and [11.3.7], the owner waives damages to both the Work and the non-Work property when the owner obtains two separate policies. We see no reason why the parties would intend a different result when, instead of purchasing two separate policies, the owner relied on one policy covering both the Work and the non-Work property.

*Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.*, 275 Neb. 702, 718, 749 N.W.2d 124, 135 (2008).

¶9.     Subparagraph 11.3.5 is included in the contract for the limited purpose of waiving subrogation rights when the owner did not have a preexisting policy that covered work and non-work property.  In the event that an owner did not have a preexisting policy and elected to purchase one after the start of the work, they could choose to purchase a policy that covered only the work, in which case there would be no waiver of subrogation rights as to the non-work property.  Additionally, if the owner had a preexisting insurance policy that only covered the work property, they could choose to purchase another insurance policy to cover non-work property.  Subparagraph 11.3.5 provides that if an owner chose to do so, the owner waives all rights for damages caused by fire "in accordance with the terms of Section 11.3.7."  Essentially, subparagraph 11.3.5 is a catch-all provision that allows a contractor the

6

benefit of subrogation, even if the owner did not have a preexisting policy that covered the non-work property.

¶10.    The interpretation of a majority of courts tracks the plain meaning of the contract language and furthers the goal of the contract, to prevent litigation.  Given the general waiver of subrogation in subparagraph 11.3.7 and subparagraph 11.3.5, which provides subrogation when the owner purchases a separate policy to cover non-work property, the only instance when damage to non-work property would not be covered by a subrogation waiver is if the owner did not have any policy insuring the non-work property.  The waiver of subrogation in the American Institute of Architects (AIA) form A201-2007 applies to both work and non-work property.

**CONCLUSION**

¶11.    Based on the plain meaning of the contract language, the waiver of subrogation applies to work and non-work property.

¶12.    **CERTIFIED QUESTION ANSWERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**