# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-SA-00662-SCT

*WATKINS CONSTRUCTION, INC.*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/01/2024 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| TRIAL COURT ATTORNEYS: | JAMES WILLIAMS JANOUSH |
| | HARRIS H. BARNES, III |
| | JOHN STEWART STRINGER |
| | NICHOLAS ALEXANDER LOMELI |
| | MATTHEW TIMMONS HENRY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES WILLIAMS JANOUSH |
| | HARRIS H. BARNES, III |
| ATTORNEYS FOR APPELLEE: | DREW DOUGLAS GUYTON |
| | NICHOLAS ALEXANDER LOMELI |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/11/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. What started as a tax fight between the Mississippi Department of Revenue (MDOR) and a local construction company has turned into a request for a judicial advisory opinion on tax issues. MDOR had audited Watkins Construction, Inc., and initially assessed the company $524,283 in sales tax. Upset about MDOR's audit and assessment, Watkins sought administrative review. The Board of Review first reduced Watkins's assessed sales taxes to

$423,375. After that, Watkins petitioned the Board of Tax Appeals (BTA) for a deeper cut, and the BTA further reduced Watkins's assessed sales taxes to $168,474—an amount the company paid in full.

¶2. At this point, MDOR became aggrieved by the ordered sales-tax reductions. So MDOR appealed the BTA's decision to chancery court, alleging the BTA made three specific errors in reducing the amount of sales tax Watkins owed. Watkins did not appeal the BTA's decisions. Nor did Watkins cross-appeal. Instead, Watkins sought summary judgment. And the chancellor granted summary judgment in Watkins's favor on all three issues MDOR appealed.

¶3. Though no presented issues remained, Watkins filed what it called a motion for reconsideration, clarification, or alternative relief. Watkins's counsel had tried to slip in an unraised "ancillary" tax question that it wanted "guidance" about, even though the company had not appealed or cross-appealed the issue to the chancery court. Because the chancellor had already addressed every issue presented for appeal, the chancellor denied the company's post-judgment request. Still unsatisfied, Watkins further appealed to this Court.

¶4. After review, we find the chancellor properly granted Watkins summary judgment on the three issues MDOR appealed. Those were the only issues appealed from the BTA and the only issues before the chancellor. Because neither trial courts nor this Court give advisory opinions about unraised legal questions, we see no abuse of discretion in the chancellor's denying Watkins's post-judgment reconsideration motion. We affirm.

2

**Facts and Procedural History**

¶5. Watkins is a roofing and repair company formerly located in the City of Jackson. Watkins primarily performs roofing repairs stemming from insurance claims. Watkins also performs a small number of initial roofing installations.

### I. The First Audit

¶6. On August 29, 2014, MDOR sent Watkins an audit notice letter. This letter covered the time period of January 1, 2011 "through the current period(s)."

¶7. MDOR's auditor explained that she audited Watkins for the period between June 1, 2011, and August 31, 2014. In 2015, MDOR then sent Watkins an audit-assessment letter. This particular letter informed Watkins it was being assessed $46,004 in sales tax, excluding penalties and interest. The audit-assessment letter only assessed sales tax for 2013. MDOR did not assess Watkins any other tax between 2011 and August 31, 2014.

¶8. During this audit period, Watkins had reported its insurance-related roofing jobs as nontaxable repair jobs. And MDOR's auditor made the decision with her manager and supervisor not to subject any insurance repair jobs to sales tax. So none of the taxes assessed for 2013 included sales tax on insurance-related repairs.

### II. The Second Audit

¶9. In October 2017, MDOR again notified Watkins that it would conduct a sales-tax audit. In the 2017 letter, MDOR explained this second audit would cover January 1, 2014, through August 31, 2017. This new audit resulted in a $524,283 sales-tax and special-sales-tax assessment against Watkins, including penalties and interest.

¶10. Watkins appealed the second audit assessment to MDOR's Board of Review (BOR). The BOR amended the sales tax Watkins owed, reducing it to $423,375. This reduction resulted from the removal of all roofing jobs consisting of more than 50 percent repairs, sales to exempt entities, and bad-debt write-off. The BOR also credited Watkins for taxes paid on materials.

¶11. Additionally, the BOR found that the January 1, 2014, through August 31, 2014 period should be included in the second audit. The BOR included this period because it did not see any invoices Watkins had provided to MDOR during the first audit. And because it had no invoices for insurance jobs during the first audit, the BOR determined Watkins's insurance-related jobs could be included in the second audit. Finally, citing an MDOR regulation, the BOR found Watkins had to pay Jackson's one-percent special infrastructure tax because it was located there.

### III. Appeal to the BTA

¶12. Watkins then appealed the BOR's decision to the BTA. Watkins raised four issues in its BTA appeal: (1) whether the City of Jackson's one-percent infrastructure tax applied to jobs performed outside the city, (2) whether MDOR wrongfully included the previously audited period of January 1, 2014, through August 31, 2014, in the second audit, (3) whether MDOR should have treated Watkins's insurance-related jobs as nontaxable sales in the second audit as it had in the first audit, and (4) whether homeowner roof-repair jobs stemming from insurance claims were repairs not subject to tax unlike new installation jobs, which were subject to sales tax.

4

¶13.    Upon review, the BTA found in Watkins's favor on the first three issues.  First, the BTA found Jackson's one-percent infrastructure tax did not apply to jobs performed outside the city.  That is because Mississippi Code Section 27-65-241(2) (Rev. 2024) only authorized the infrastructure tax on services *within* the municipality.  Second, based on the auditor's testimony, the BTA found the January 1, 2014, through August 31, 2014, period had already been audited.  And third, the BTA found Watkins met all requirements of Mississippi Code Section 27-65-37 (Rev. 2024), entitling it to prior-audit relief for insurance jobs because MDOR's first audit had treated insurance jobs as nontaxable.

¶14.    The BTA did not rule on Watkins's fourth issue.  Having found MDOR could not flip-flop and change its assessment tactics in the second audit, the BTA saw no need to decide whether Watkins's insurance jobs were repairs or installations.  Regardless of their label—taxable installations or nontaxable repairs—the BTA found these insurance jobs could not be taxed in the second audit.  Overall, the BTA reduced Watkins's taxes owed from $423,375 to $168,474.  At that point, Watkins paid the BTA's overall tax assessment in full.

### IV.    The Appeal to Chancery Court

¶15.    MDOR was upset with the BTA's sales tax decisions.  So it petitioned the Chancery Court of Hinds County to review the three issues the BTA had just decided in Watkins's favor.[1]

¶16.    Notably, Watkins did not appeal any issues.  Nor did it cross-appeal the BTA's

---

[1] MDOR alleged the BTA misapplied law in determining: (1) the one-percent infrastructure tax did not apply to Watkins's jobs performed outside of Jackson, (2) MDOR improperly included the January 1, 2014, through August 31, 2014, period in the second audit, and (3) Watkins was entitled to prior-audit relief for taxes on its insurance jobs.

5

decision not to resolve the fourth issue it had earlier pushed—the "repairs" versus "installations" question. Instead, Watkins simply answered MDOR's appeal and asked the chancery court to dismiss MDOR's claims.

¶17. After discovery, both parties moved for summary judgment. Watkins first sought partial summary judgment on the one-percent infrastructure tax issue. After that, MDOR asked the chancery court for summary judgment on the three issues it raised in its petition. Watkins responded with a cross-motion for summary judgment. It sought judgment in its favor on the three issues MDOR had appealed. Specifically, it argued the one-percent infrastructure tax was inapplicable to jobs performed outside of Jackson, the January 1, 2014, through August 31, 2014, period was wrongfully included in the second audit, and it was entitled to prior-audit relief on insurance jobs.

¶18. Watkins also tried to slip an unraised issue into its cross-motion for summary judgment. Watkins mentioned what it called "ancillary issues" about how its insurance jobs should be classified as nontaxable "repairs" versus taxable "installations." MDOR objected, arguing Watkins was barred from raising what amounted to new assignments of error in a summary-judgment motion.

¶19. During a hearing on the competing summary-judgment motions, Watkins's counsel acknowledged the ancillary "repairs" versus "installations" issue "may or may not be before the court." But the chancellor did not bite on Watkins's newly pitched argument. Instead, the chancellor limited her review to the issues MDOR appealed from the BTA's ruling. And in doing so, the chancellor denied MDOR summary judgment and granted summary

6

judgment in Watkins's favor on all three issues.

### V. Watkins's Motion for Reconsideration

¶20. While Watkins won every issue MDOR had appealed, Watkins still wanted the chancellor's advice on whether insurance jobs were taxable at all as either "repairs" or "installations." So it moved for reconsideration, clarification, and/or for alternative relief under Mississippi Rules of Civil Procedure 59 and 60, insisting "ancillary issues" remained. As Watkins put it, the company wanted "guidance from [the chancery court] on the issue, not only for the tax periods includable in the [second] audit, but also for *guidance going forward*." (Emphasis added.)

¶21. The chancellor denied Watkins's motion. She determined the statute governing appeals from the BTA—Mississippi Code Section 27-77-7 (Rev. 2024)—limited her jurisdiction to only those matters appealed by a party seeking judicial review. And she explained she could not address issues Watkins had not appealed. The chancellor further found Watkins neither satisfied Rule 59's nor Rule 60's requirements. Watkins timely appealed the chancellor's denial.

### Discussion

¶22. On appeal to this Court, Watkins argues that Mississippi Code Section 27-77-7(5)—the statute governing appeals from the BTA to chancery court—required the chancellor to decide all legal issues, even the ancillary "repairs" versus "installations" issue that neither side appealed from the BTA. We disagree.

### I. Watkins did not properly raise the "ancillary issues."

¶23.    Section 27-77-7 is the statutory mechanism for parties aggrieved by the BTA's decision—either the agency or taxpayer—to petition the chancery court for judicial review. Miss. Code Ann. § 27-77-7(1).  For example, if MDOR files a petition, the statute allows taxpayers like Watkins to file a cross-appeal.  Miss. Code Ann. § 27-77-7(3).  The statute further provides in relevant part:

> The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed. . . . Based on the evidence presented at trial, the chancery court shall determine whether *the party bringing the appeal* has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested. The chancery court shall decide all factual and legal questions presented . . . .

Miss. Code Ann. § 27-77-7(5) (emphasis added).

¶24.    The chancery court is the first court in which MDOR's final decision can be reviewed. *Equifax, Inc. v. Miss. Dep't of Revenue*, 125 So. 3d 36, 42 (Miss. 2013), *superseded by statute on other grounds as stated in* ***Toolpushers Supply Co. v. Miss. Dep't of Revenue***, 379 So. 3d 333 (Miss. 2024).[2]  And Section 27-77-7 "provides a judicial forum to try anew (or for the first time) the legal issues raised by the taxpayer in chancery court."  *Id.*  Under Section 27-77-7(5), "the party petitioning the court for relief bears the burden of proving its claims . . . ."  *Id.* at 43.

¶25.    Arguing the chancellor wrongly declined to address the ancillary issues, Watkins hangs its hat on Section 27-77-7(5)'s mandate that the chancery court "shall decide all factual

---

[2] *See infra* note 3.

and legal questions presented[.]" § 27-77-7(5). But what Watkins keeps missing is that neither party presented this admittedly ancillary issue to the chancery court. And there is simply no legal avenue to resurrect unappealed issues by slipping them into a cross-motion for summary judgment. So the chancellor correctly applied Section 27-77-7(5).

¶26.   Watkins argues *Equifax* suggests the chancellor had to decide "all factual and legal questions presented." But in that case, the taxpayer followed Section 77-7-7(5) and actually raised the question it wanted the chancellor to answer. In *Equifax*, the Mississippi State Tax Commission audited Equifax, Inc. *Equifax*, 125 So. 3d at 38. Equifax disagreed with the audit findings. It appealed twice, once to the Commission's Board of Review and then to the three-member Tax Commission. *Id.* at 39. Still aggrieved by the assessed tax, Equifax *appealed* the Commission's assessment to the chancery court, which affirmed the Commission's assessments. *Id.* On appeal to this Court, we examined the chancery court's de novo review of the Commission's findings. And we found that "the chancellor properly limited his analysis to determining whether Equifax had proven that it was entitled to reversal of the Commission's decision for any of the prescribed legal bases for reversing an agency decision . . . ."[3] *Id.* at 42. This Court found that because Equifax brought the appeal to the chancery court, *it* had the burden of proof on the issues it raised. *Id.* at 43.

¶27.   Watkins's case is distinguishable because in *Equifax*, the taxpayer, not the agency,

_____

[3] While not relevant to the issues in the current appeal, Section 27-77-7 as interpreted in *Equifax* mandated that the chancery court "give deference to the decision and interpretation of law and regulations by the commission[.]" *Equifax*, 125 So. 3d at 41 (citing Miss. Code Ann. § 27-77-7(4) (2005)). The Legislature subsequently amended the statute. Now, the chancery court is to give no deference to the BTA's decisions. *See Toolpushers*, 379 So. 3d 333.

appealed under the statute. In cases where a taxpayer appeals the agency's final decision, the chancery court obviously has a statutory duty to resolve all issues the taxpayer raises on appeal. But here, the taxpayer, Watkins, *raised no issues* through the appellate process because it neither appealed nor cross-appealed the BTA's decision.

¶28. Watkins tried to evade this jurisdictional roadblock by shoehorning an admittedly ancillary issue into its cross-motion for summary judgment. But nothing in Section 27-77-7(5) allows that. Instead, the statute mandates that the chancellor "shall determine whether *the party bringing the appeal*" has met its burden of proof. § 27-77-7(5) (emphasis added). And here the party bringing the appeal was MDOR, not Watkins. So the unraised "repairs" versus "installations" issue was not properly before the chancellor.

¶29. What Watkins really seeks is an advisory opinion on an issue that it admits "may or not be before the court." And having won on every issue properly raised, it simply wants additional judicial tax advice for "guidance going forward." Watkins even admits it "now collects and remits sales tax on all roofing jobs; so the issue will not arise in the future." Yet on appeal to this Court, Watkins reiterates that it still wants "prospective guidance" on the "installations" versus "repairs" issue.

¶30. But "as a matter of judicial policy, this Court does not issue advisory opinions." *Hughes v. Hosemann*, 68 So. 3d 1260, 1263 (Miss. 2011); *see also Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 93 (Miss. 2010); *Sheldon v. Ladner*, 205 Miss. 264, 271, 38 So. 2d 718, 719 (1949). Therefore, we affirm the chancellor's denial of an advisory opinion on an improperly raised issue.

**II.    The chancellor properly denied Watkins's post-judgment motion.**

¶31.    For this same reason, the chancellor properly denied Watkins's motion for reconsideration, clarification, and alternate relief under Rules 59 and 60.

¶32.    A trial court's denial of a Rule 59 motion is reviewed for abuse of discretion. ***Brooks v. Roberts***, 882 So. 2d 229, 233 (Miss. 2004).  "[T]o succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." ***Id.***

¶33.    Watkins argues that its motion was necessary to correct an error of law under Rule 59. But Watkins points to no clear error of law in the chancellor's summary judgment order, which addressed all "legal questions presented" in MDOR's appeal. *See* § 27-77-7(5). Thus, the chancellor did not abuse her discretion by denying Watkins's Rule 59 motion.

¶34.    Watkins's post-judgment motion also cites Rule 60.  Under Rule 60(a), a court may grant relief from a judgment to correct clerical errors.  Miss. R. Civ. P. 60(a).  And Rule 60(b) allows relief for mistakes, inadvertence, newly discovered evidence, fraud, or any other justifiable reason.  Miss. R. Civ. P. 60(b).  The catch-all for "any other reason justifying relief from the judgment" language under Rule 60(b)(6) is reserved for "extraordinary and compelling circumstances."  ***Briney v. U.S. Fid. & Guar. Co.***, 714 So. 2d 962, 966 (Miss. 1998).

¶35.    Watkins neither alleges a clerical mistake under Rule 60(a) nor any other cited relief justification under Rule 60(b).  And here, failing to properly raise an appellate issue is

certainly not an extraordinary or compelling circumstance. Therefore, the chancellor did not abuse her discretion by denying Rule 60 relief.

## Conclusion

¶36. Watkins did not appeal any part of the BTA's decision. So it could not allege for the first time in its cross-motion for summary judgment that the BTA erred. The chancellor granted Watkins summary judgment on all appealed issues. Thus, there were no unresolved issues, and the chancellor properly denied Watkins's post-judgment motion.

¶37. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**