PITTMAN, Justice,
for the Court:
On May 21, 1985, Ashland Pipe Line Company (Ashland) filed a complaint against the Mississippi State Tax Commission (Commission) alleging that the Commission incorrectly charged Ashland with $109,610.80 (which includes taxes due and interest to October 31, 1990) in additional income tax for the taxable years of 1979, 1980, and 1981, plus interest. The Commission filed an answer denying that the additional assessment was incorrect and a cross-bill requesting the lower court to enter judgment in the amount of $109,610.80 (which includes taxes due and interest to October 31, 1990), together with *997 interest at the statutory rate from the time the debt accrued until paid in full, and all court costs accruing in the cause.
The lower court affirmed the Commission’s assessment of additional income tax and interest against Ashland. Feeling aggrieved, Ashland appealed assigning several errors. Finding no reversible error, this Court affirms.
I.
Ashland was incorporated under the laws of Ohio, had its commercial domicile in Kentucky, and carried on business activities in Mississippi. The Commission audited Ash-land’s books and discovered that Ashland excluded dividend income from two of its subsidiaries, Ohio River Pipe Line Company and Owensboro-Ashland Company, in determining taxable income for Mississippi. The Commission included these dividends in income subject to tax and apportioned the income within and without Mississippi by means of a formula which was comprised of the property, payroll, and barrel miles (sales) factors of Ashland. The formula, however, did not recognize or include any of these factors with respect to the subsidiary companies which paid the dividends. Ashland contends that this method was not authorized by law and that its application to Ashland violated the due process and commerce clauses of the United States Constitution.
Ashland owned pipelines in Illinois, Indiana, Louisiana, Mississippi, and Ohio and served more than a dozen states through its subsidiaries and interests in other pipelines. Ashland owned three subsidiary companies: Owensboro-Ashland Company, Ohio River Pipe Line Company, and Algonquin Pipe Line Company. Ashland’s parent company was Ashland Oil, Inc. Ashland and its subsidiaries carried oil for Ashland Oil and unrelated third parties.
Ashland’s operation in Mississippi consisted of the Ferriday system which was a crude oil gathering system in Louisiana and Mississippi and an undivided one-fifth interest in the Capline system which ran through the State of Mississippi. The Capline system started in St. James, Louisiana, ran the entire length of the State of Mississippi, and ended in Patoka, Illinois.
Most of the crude oil gathered by the Ferriday system belonged to Ashland Oil. This crude oil was either injected in the Capline System at Liberty, Mississippi, or in the Mid-Valley Pipeline at Delhi, Louisiana. Some of the crude oil injected into the Cap-line and Mid-Valley pipelines was eventually delivered to Owensboro-Ashland Company. Some of the crude oil from both the Ferriday and Capline systems ended up as part of the crude oil or finished product transported by the Ohio River Pipe Line Company and Ow-ensboro-Ashland Company.
The pipeline system operated by Ashland and its subsidiaries was a highly integrated operation which, even though made up of pipelines owned by various companies in various states, was operated as one unit. All responsibilities for the operation of the pipelines in Ohio, including those owned by the Ohio River Pipe Line Company, belonged to Ashland. Ohio River Pipe Line Company did not even have any employees. Ashland operated their pipelines for them. Owens-boro-Ashland Company had employees to take care of the day-to-day operations for the pipelines in Kentucky which were in the system, but all policy decisions of that corporation, as well as Ohio River Pipe Line Company, were made by the president of Ashland.
At trial, Larry Staley, controller for Ash-land, and John Ross, Director of Tax Compliance for Ashland Oil, testified on behalf of Ashland. Randy Ladner, an accountant for ' the Commission, and Gerald Yates, Director of the Income and Franchise Tax Division for the Commission, testified on behalf of the Commission. Both Ashland and the Commission agreed that Ashland and its subsidiaries were engaged in a multi-state unitary business activity consisting of the operation of an interstate pipeline system.
Operating the pipelines as a multi-state unitary business makes the overall operation more efficient and more profitable. The profitability arising from the unitary operation, however, cannot be directly assigned to any particular state, but arises from the unitary operation as a whole. Thus, there was income resulting from the Mississippi operation which cannot be determined on the basis of geographical accounting. As a result, the *998 Commission must use apportionment in determining Ashland’s income tax liability.
Ashland, however, points out that Owens-boro-Ashland Company and Ohio River Pipe Line Company do not conduct any business activities in the State of Mississippi. Ash-land calculated its income by apportioning to the State of Mississippi the amount of income which resulted from the application of the statutory three-factor formula to income derived from its own pipeline movements. Ashland did not calculate its income under the “unitary” method which would have apportioned to Mississippi a share of the income derived from the operation of the entire interstate pipeline system. Ashland allocated the dividend income from its subsidiaries to Kentucky, the state of its commercial domicile, rather than apportion it among the various states where it conducts business.
In calculating Ashland’s income tax, the Commission included the dividend income that Ashland received from its subsidiaries and applied an apportionment formula. The Commission contends that the dividends constituted “business income” from Ashland’s multi-state unitary business activities. According to Ashland, the inclusion of the dividend income resulted in a disproportionate amount of income being taxed by the State of Mississippi and resulted in the taxation of income from sources clearly outside the State. Gerald Yates, however, testified that the method used by the Commission accurately reflected the amount of income attributable to activities that occurred in Mississippi.
The lower court affirmed the Commission’s assessment of additional income tax. Ash-land appeals from the lower court judgment maintaining that the Commission acted arbitrarily and without statutory authority. On appeal, Ashland raises the following assignments of error:
I. THE TRIAL COURT ERRED IN FINDING THE STATE CAN TAX DIVIDENDS OF A FOREIGN CORPORATION HAVING ITS COMMERCIAL DOMICILE OUTSIDE MISSISSIPPI.
II. THE COMMISSION FAILED TO TAX THE TAXPAYER’S BUSINESS INCOME DERIVED FROM UNITARY MULTI-STATE ACTIVITIES IN THE MANNER PRESCRIBED BY STATUTE.
III. THE LOWER COURT’S DECISION IS BASED UPON FINDINGS WHICH ARE CONTRARY TO THE UNCONTRADICTED EVIDENCE PRESENTED BY THE TAXPAYER AND IS THEREFORE ARBITRARY AND CAPRICIOUS.
IV. THE METHOD EMPLOYED BY THE COMMISSION TO CALCULATE THE AMOUNT OF INCOME SUBJECT TO TAX BY THE STATE OF MISSISSIPPI VIOLATES THE UNITED STATES CONSTITUTION AND IS THEREFORE INVALID.
II.
Ashland contends that the lower court erred in finding that the State can tax dividend income of a foreign corporation having its commercial domicile outside Mississippi. Ashland contends that the dividends received from its subsidiaries should have been allocated to Kentucky, the commercial domicile of Ashland, and not apportioned. Mississippi utilizes both “allocation” and “apportionment” in its taxing scheme.
Allocation and apportionment of income. Any corporation or organization having income from business activity which is taxable both within and without this state shall allocate and apportion its net income as provided in this section.
Miss.Code Ann. § 27-7-23(c)(2) (1972).
In support of its argument, Ashland cites § 27-7-23(c)(2)(B)(ii), which provides:
If the business income of the corporation is derived in part from property owned or business done in this state and in part from property owned or business done without the state and the corporation is taxable both within and without this state, only that portion of the business income which is attributable to the property owned or business done within this state shall be allocated to this state. Income which is in like manner attributable to *999 property owned or business done in another state shall be allocated to that state if taxable in that state. Business income derived from intangible property of any kind or nature shall be treated as income from sources ivithin this state if the evidence of ownership of such property has acquired a business, commercial or actual situs in this state. Business income derived from unitary multi-state activities which cannot be allocated to any state shall be apportioned to this state by use of formulas prescribed by the commissioner.
(emphasis added). Ashland maintains that the Commission did not have the statutory authority to apportion the dividend income because the intangible property had not acquired a “business, commercial or actual si-tus in this State.” According to Ashland, the dividend income came from subsidiaries that did not conduct any business activities in this State and the stock was kept at Ashland’s commercial domicile in Kentucky.
Ashland, however, is relying on one sentence. “[T]he legislature’s intention must be determined by the total language of the statute and not from a segment considered apart from the remainder that the overall intention may be decided without adjudicating which of two provisions prevails.” Brady v. John Hancock Mut. Life Ins. Co., 342 So.2d 295, 298 (Miss.), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977). This Court must consider the entire tax statute.
The analysis must begin with the definition of “business income.” Section 27-7-23(a)(2), defines “business income” as follows:
“Business income” means income arising from transactions and activity in the regular course of the taxpayer’s trade or business and includes income from tangible and intangible property if the acquisition, management and disposition of the propr erty constitute integral parts of the taxpayer’s regular trade or business operations.
(emphasis added) Income arising from intangible property, such as dividend income, is included in the definition of business income if it constitutes an integral part of the taxpayer’s regular trade or business operations.
Whether business income, including business income from dividends, is to be allocated or apportioned is set out in subparagraphs (i), (ii), and (iii) of § 27-7-23(c)(2)(B):
(B) All business income of the corporation, including business income from rents, royalties, capital gains, interest and dividends which constitute integral parts of the corporation’s regular trade or business activities or operations, shall be allocated or apportioned as follows:
(i) If the business income of the corporation is derived solely from property owned or business done in this state and the corporation is not taxable in another state, the entire business income shall be allocated to this state.
(ii) If the business income of the corporation is derived in part from property owned or business done in this state and in part from property owned or business done without the state and the corporation is taxable both within and without this state, only that portion of the business income which is attributable to the property owned or business done within this state shall be allocated to this state. Income which is in like manner attributable to property owned or business done in another state shall be allocated to that state if taxable in that state. Business income derived from intangible property of any kind or nature shall be treated as income from sources within this state if the evidence of ownership of such property has acquired a business, commercial or actual situs in this state. Business income derived from unitary multi-state activities which cannot be allocated to any state shall be apportioned to this state by use of formulas prescribed by the commissioner.
(iii) Any corporation, taxable both within and without this state, which maintains or could maintain books of account detailing allocation of receipts and expenditures reflecting clearly the business income attributable to property owned or business done in this state, shall determine Mississippi net business income on the basis of direct or separate accounting. A proportionate part of non-allocable general and administrative business expenses may be *1000 deducted by use of a formula prescribed by the commissioner. If the commissioner finds that direct or separate accounting of Mississippi net business income does not reflect the true income attributable to property owned or business done in Mississippi, or, if by reason of the unitary multi-state activities of the corporation direct or separate accounting for Mississippi net business income is impossible, the net business income shall be apportioned to this state by use of forrmdas of apportionment prescribed by the commissioner.
(emphasis added)
Subparagraph (i) does not apply because it deals with a situation in which all income is derived from business activities in this State and the corporation is not taxable in another state. Subparagraphs (ii) and (iii), however, both deal with the situation where the corporation is taxable both within and without this State.
Subparagraph (ii) provides that business income attributable to the corporation’s property owned or business done in a particular state shall be allocated to that state, but, at the same time, the statute recognizes that in many cases dealing with unitary multi-state activities, business income will have to be apportioned because the income is not alloca-ble to any particular state. Subparagraph (iii) is a continuation of this theory, specifying that the direct and separate accounting method is the method to be used in determining income attributable to property owned and business done in Mississippi in order that such business income can be allocated to Mississippi; but when such method does not accurately reflect the “true income” attributable to this State, then this statute provides for apportionment of such income.
In many cases involving unitary multi-state activities, direct or separate accounting does not properly reflect income. This was recognized by the United States Supreme Court in Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 438, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510, 521 (1980). The question, therefore, is whether the business income can be accurately attributed to the State of Mississippi or to another state on the basis of direct or separate accounting. If it can, then it should be allocated to that State. If it cannot, then it should be apportioned.
John Ross testified that businesses are operated as a unitary business because they are more efficient. Randy Ladner stated that the operation of the pipeline system as a unitary business increased revenues and reduced expenses. This results in profits which cannot be assigned to any one state, but relate to the entire unitary operation. The higher profits result in higher retained earnings available to be paid as dividends. Thus, the dividend income must be apportioned pursuant to § 27-7-23(e)(2)(B)(iii).
This conclusion is supported by the regulations promulgated by the Commission with respect to § 27-7-23. While not controlling, these rules provide help in interpreting legislative intent. Mississippi State Tax Commission v. Hinton, 218 So.2d 740, 742 (Miss. 1969). Regulation 1.27 — 7—23(7)(c)(3) provides:
Apportionment of income. If the business activity in respect to any trade or business of a taxpayer occurs both within and without this state, and if by reason of such business activity the taxpayer is taxable^ another state, the portion of the net income (or net loss) arising from such trade or business which is derived from sources within this state, shall, where direct or separate accounting of net income or loss is not feasible, be determined by apportionment in accordance with the further provisions of this Regulation.
The dividend income in question represents business income. Ashland is in the business of operating pipelines under one large multi-state unitary operation. The two subsidiaries that paid the dividends to Ash-land operate some of the pipelines under this unitary operation. Since the income from the dividends constituted “integral parts of the corporation’s regular trade or business activities or operations,” the dividends fall into the category of “business income.” Miss.Code Ann. §§ 27-7-23(a)(2), (c)(2)(B).
In Mobil Oil, the United States Supreme Court was faced with a case similar to the one at hand. The appellant was a corporation organized under the laws of New York *1001 which was also the corporation’s principal place of business and its “commercial domicile.” It conducted business in several states including Vermont. Vermont imposed a corporate income tax which apportioned part of the dividend income received by the corporation from some of its subsidiaries and affiliates doing business abroad. The corporation challenged the tax claiming it violated the due process clause and the commerce clause. In upholding the tax, the United States Supreme Court held:
Taxation by apportionment and taxation by allocation to a single situs are theoretically incommensurate, and if the latter method is constitutionally preferred, a tax based on the former cannot be sus-tained_ We find no adequate justification, however, for such a preference. Although a fictionalized situs for intangible property sometimes has been invoked to avoid multiple taxation of ownership, there is nothing talismanic about the concepts of “business situs” or “commercial domicile” that automatically renders those concepts applicable when taxation of income from intangibles is at issue. The Court has observed that the maxim mobilia sequun-tur personam, upon which these fictions of situs are base, “states a rule without disclosing the reasons for it.” ... The Court also has recognized that “the reason for a single place of taxation no longer obtains” when the taxpayer’s activities with respect to the intangible property involve relations with more than one jurisdiction.... Even for property or franchise taxes, apportionment of intangible values is not unknown _ Moreover, cases upholding allocation to a single situs for property tax purposes have distinguished income tax situations where the apportionment principle prevails....
The reasons for allocation to a single situs that often apply in the case of property taxation carry little force in the present context. Mobil no doubt enjoys privileges and protections conferred by New York law with respect to ownership of its stock holdings, and its activities in that State no doubt supply some nexus for jurisdiction to tax.... Although we do not now presume to pass on the constitutionality of a hypothetical New York tax, we may assume, for present purposes, that the State of commercial domicile has the authority to lay some tax on appellant’s dividend income as well as on the value of its stock. But there is no reason in theory why that power should be exclusive when the dividends reflect income from a unitary business, part of which is conducted in other States. In that situation, the income bears relation to benefits and privileges conferred by several States. These are the circumstances in which apportionment is ordinarily the accepted method. Since Vermont seeks to tax income, not ownership, we hold that its interest in taxing a proportionate share of appellant’s dividend income is not overridden by any interest of the State of commercial domicile.
Mobil Oil, 445 U.S. at 444-46, 100 S.Ct. at 1235-36, 63 L.Ed.2d at 525-26 (citations omitted).
The dividends received by Ashland constitute “business income” as defined by § 27-7-23(a)(2). Since both parties concede that Ashland’s operation is a multi-state unitary operation, its “business income” is subject to apportionment because it cannot be allocated to any particular state and direct or separate accounting for Mississippi net business income is impossible. Taking the statute as a whole, the Commission correctly determined that the dividends were subject to apportionment. The lower court did not err in affirming the Commission’s assessment of additional tax.
III.
Ashland maintains that the Commission applied a “hybrid” method of taxation which is not permitted by the Mississippi income tax law. According to Ashland, the Commission taxed its dividends by means of a three-factor formula which is not authorized by the statute. Ashland argues that the statute requires the allocation of dividends to the situs of the stock and mandates the apportionment, not of dividends, but of income derived from unitary multi-state activities. Thus, Ashland construes the statute to require that the entire income of the uni *1002 tary multi-state business be included in determining its income tax liability.
The Commission argues that such a construction is contrary to the clear wording of the Mississippi income tax law. Miss.Code Ann. § 27-7-23(c)(2) reads as follows:
Allocation and apportionment of income. Any corporation or organization having income from business activity which is taxable both within and without this state shall allocate and apportion its net income as provided in this section.
(emphasis added) Thus, the net income to be allocated or apportioned is the net income of the “corporation” and not the net income of the unitary multi-state operation.
Furthermore, it is clear that the Legislature did not intend that the Commission only apportion the operating business income, but also such business income such as dividend income:
All business income of the corporation, including business income from rents, royalties, capital gains, interest and dividends which constitute integral parts of the corporation’s regular trade or business activities or operations, shall be allocated or apportioned as follows: ....
Miss.Code Ann. § 27-7-23(c)(2)(B).
Finally, the Chancellor agreed with the Commission: “Miss.Code Ann. Section 27-7-23(c)(2)(B)(ii) does not authorize the apportionment of the business income for the entire unitary multi-state activity, but only the business income which Ashland had derived from such activity which in the present case took the form of dividends_” This assignment of error is without merit.
IV.
Ashland contends that the Chancellor made several findings that were clearly erroneous, arbitrary and capricious because they are directly against the clear, convincing and uncontradicted evidence. According to Ash-land the Commission presented no evidence whatsoever as to whether the methodology employed by the Commission resulted in the taxation of a reasonable amount of Ashland’s income as related to its business activities in Mississippi, as to the source of the dividends in question, or as to whether such dividends could be appropriately assigned to a particular state.
In fact, Ashland maintains that its witnesses, Staley and Ross, testified that the methodology employed by the Commission resulted in the taxation of demonstrably extraterritorial income as well as the taxation of income “out of all proportion” to activities conducted in the State of Mississippi. Staley stated “no income from [the subsidiaries] was derived from Mississippi.” Ross also stated that “the dividend income was unrelated to Ashland Pipe Line’s activities in Mississippi, and to tax it would be taxing values from outside the state and would overstate our Mississippi income and consequently our Mississippi income tax.”
Finally, Ashland argues that it provided clear and cogent evidence as to the extent of the distortion created by the Commission’s apportionment formula. Exhibits from the Commission’s audit reveal that the Commission increased Ashland’s apportionable income by more than three and one-half million dollars for 1980 and by three and one-quarter million dollars for 1981. According to Staley, not “one penny” of the dividends added to Ashland’s income on audit had its source in the State of Mississippi.
Ashland is contesting the findings relating to its constitutional due process and commerce clause challenges arising from the apportionment formula which was employed by the Commission. This Court has described the burden placed on a taxpayer challenging such an apportionment formula as follows:
We held in Reliance Manufacturing Company v. Barr, 245 Miss. 86, 146 So.2d 569 (1962), that the burden of proof is upon one who attacks a tax formula to show that it taxes extraterritorial values, and cited numerous cases in support of the rule. It is likewise the rule that the burden of proof is upon the taxpayer to show that a formula and its application is unfair, and that an excessive portion of its net income is thereby allocated to a given state.
Columbia Gulf Transmission Co. v. Barr, 194 So.2d 890, 896 (Miss.1967).
*1003 Furthermore, in Container Corp. v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the United States Supreme Court held:
The Constitution does not “invalidate] an apportionment formula whenever it may result in taxation of some income that did not have its source in the taxing State_” ... Nevertheless, we will strike down the application of an apportionment formula if the taxpayer can prove “by ‘clear and cogent evidence’ that the income attributed to the State is in fact ‘out of all appropriate proportions to the business transacted ... in that State,’ ... or has ‘led to a grossly distorted result,’. ...”
Id. at 169-70, 103 S.Ct. at 2942, 77 L.Ed.2d at 556.
Ashland basically relies upon the concluso-ry statements of its witnesses. In continuing to emphasize that the revenue produced by the subsidiaries did not result from any activities in Mississippi, Ashland attempts to establish that the inclusion of the dividend income results in extraterritorial taxation which is based on a theory of geographical accounting. The Commission, however, is not taxing the income resulting from the movement of oil by the subsidiaries in Kentucky or Ohio, but the unassignable profit that arises from a taxpayer’s operating its business as a single unitary business which cannot be determined by geographical accounting. Ashland’s geographical accounting argument does not constitute “clear and cogent” evidence.
The United States Supreme Court effectively dealt with this situation in Mobil Oil:
In the past, apportionability often has been challenged by the contention that income earned in one State may not be taxed in another if the source of the income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business_ In these circumstances, the Court has noted that separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integrations, centralization of management, and economies of scale.... Because, these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable “source.” Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required.
Id. 445 U.S. at 438, 100 S.Ct. at 1232, 63 L.Ed.2d at 521 (citations omitted).
Both of Ashland’s witnesses, Staley and Ross, admitted that Ashland’s Mississippi operation and the two subsidiaries were all part of the same unitary multi-state operation. Staley admitted that the pipeline system was an integrated system, and therefore, the Mississippi operation is related to every other part of the same system. He also admitted that due to the interconnection of pipelines, movement of oil in the Mississippi operation consisting of the Ferriday system and the Capline system resulted in movement of oil or finished products on the pipelines owned by both of the subsidiaries. Management for Ashland and the subsidiaries was handled by Ashland employees, including all policy decisions. Thus, based on these facts and the holding in Mobil Oil, Ashland failed to present “clear and cogent” evidence that the Commission incorrectly included the dividend income from the subsidiaries.
V.
Ashland maintains that the method of taxation employed by the Commission resulted in the taxation of extraterritorial income and is, thus, unconstitutional. Ashland relies on the testimony regarding the source of the subsidiaries’ income. As noted above, however, this type of geographical accounting was rejected in Mobil Oil. Under the authority of Mobil Oil, the Commission is allowed to include the dividends in apportiona-ble income, and to tax its fair share of such income. Id. at 438, 100 S.Ct. at 1232, 63 L.Ed.2d at 521.
So long as dividends from subsidiaries and affiliates reflect profits derived from a functionally integrated enterprise, those *1004 dividends are income to the parent earned in a unitary business. One must look principally at the underlying activity, not at the form of investment, to determine the propriety of apportionability.
Id. at 441, 100 S.Ct. at 1233, 63 L.Ed.2d at 523.
 Ashland further contends that the method used by the Commission was unconstitutional because it failed to include the factors (barrel miles, property and payroll) of each member of the unitary group in determining the apportionment figure. The United States Supreme Court, however, has never dictated to the states that there is a particular apportionment method which the states have to use in apportioning income.
The prevention of duplicative taxation, therefore, would require national uniform rules for the division of income. Although the adoption of a uniform code would undeniably advance the policies that underlie the Commerce Clause, it would require a policy decision based on political and economic considerations that vary from State to State. The Constitution, however, is neutral with respect to the content of any uniform rule....
While the freedom of the States to formulate independent policy in this area may have to yield to an overriding national interest in uniformity, the content of any uniform rules to which they must subscribe should be determined only after due consideration is given to the interests of all affected States. It is clear that the legislative power granted to Congress by the Commerce Clause of the Constitution would amply justify the enactment of legislation requiring all State to adhere to uniform rules for the division of income. It is to that body, and not this Court, that the Constitution has committed such policy decisions.
Moorman Mfg. Co. v. Bair, 437 U.S. 267, 279-80, 98 S.Ct. 2340, 2347-48, 57 L.Ed.2d 197, 208-09 (1978). Furthermore, in Container, the United States Supreme Court held:
Under both the Due Process and the Commerce Clauses of the Constitution, a State may not, when imposing an income-based tax, “tax value earned outside its borders.” ... In the case of a more-or-less integrated business enterprise operating in more than one State, however, arriving at precise territorial allocations of “value” is often an elusive goal, both in theory and in practice.... For this reason and others, we have long held that the Constitution imposes no single formula on the States ... and that the taxpayer has the “ ‘distinct burden of showing by “clear and cogent evidence” that [the state tax] results in extraterritorial values being taxed....’”
Id. 463 U.S. at 164, 103 S.Ct. at 2939-40, 77 L.Ed.2d at 552 (citations omitted). Thus, a combined reporting method of apportionment in the unitary business concept is not mandatory.
Finally, the burden is on Ashland to prove “by ‘clear and cogent evidence’ that the income attributed to the state is in fact ‘out of all appropriate proportions to the business transacted ... in that State’ ... or has ‘led to a grossly distorted result,’.... ” Container, 463 U.S. at 170, 103 S.Ct. at 2942, 77 L.Ed.2d at 556. The states are also given a “substantial margin of error.” Id. at 184, 103 S.Ct. at 2950, 77 L.Ed.2d at 565.
The only proof that Ashland provides regarding a disproportionate result is the fact that the Commission increased Ashland’s taxable income by 40% when it included the dividends. Ashland did not provide the lower court with a tax assessment applying the factors of the subsidiaries. It is evident that this would be required to show that a disproportionate assessment resulted from application of the Commission’s formula. The only way for Ashland to show a disproportionate result would be to compare the assessment as computed by the Commission and the assessment including all of the factors of the subsidiaries. This was not done and the burden was on Ashland to do so. Thus, Ashland failed to prove by “clear and cogent evidence” that the formula used falls outside the “substantial margin of error” for apportionment formulas.
AFFIRMED.
*1005 HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PRATHER, P.J., and BANKS, J., not participating.