# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-01134-SCT

*MISSISSIPPI DEPARTMENT OF REVENUE*

*v.*

*COMCAST OF GEORGIA/VIRGINIA, INC., n/k/a*
*COMCAST CABLE COMMUNICATIONS, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2019 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | JON FRANCIS CARMER, JR. |
| | BRIDGETTE T. THOMAS |
| | MARIA M. TODOROVA |
| | SHELDON G. ALSTON |
| | LOUIS G. FULLER |
| | ALLA RAYKIN |
| | JEFFREY A. FRIEDMAN |
| | LELAND KYLE WILLIAMS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | BRIDGETTE T. THOMAS |
| | JOHN S. STRINGER |
| ATTORNEYS FOR APPELLEE: | SHELDON G. ALSTON |
| | LOUIS G. FULLER |
| | DANIEL H. SCHLUETER |
| | JEFFREY A. FRIEDMAN |
| | MARIA M. TODOROVA |
| | ALLA RAYKIN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/13/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Department of Revenue (MDOR)[1] appeals the chancellor's entry of summary judgment in favor of Comcast of Georgia/Virginia, Inc., n/k/a Comcast Communications, LLC. Because the MDOR's franchise-tax assessment does not fairly represent the true value of Comcast's capital in Mississippi, the chancellor's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. Comcast provides cable-network and other related services in various states, including Mississippi. In addition to holding its own operating assets, Comcast holds investments in more than fifty subsidiaries that, like Comcast, are engaged in the provision of cable and cable-related services. Because these subsidiaries are engaged in the same type of business as Comcast, they are referred to as "unitary subsidiaries." These unitary subsidiaries provide services primarily outside Mississippi. Only two of the more than fifty subsidiaries, Comcast MO Digital Radio, Inc. and Comcast of Arkansas/Florida/Louisiana/Minnesota/Tennessee, Inc., have any connections in Mississippi.[2]

¶3. In addition to the unitary subsidiaries, Comcast also holds minority passive-investment interests in approximately ten "non-unitary subsidiaries" that are not engaged in or related to the provision of cable. These non-unitary subsidiaries hold nonstrategic assets acquired by Comcast as a byproduct of previous corporate acquisitions, have no connection to

---

[1] The Mississippi Department of Revenue was formally known as the Mississippi State Tax Commission.

[2] The total value of these two unitary subsidiaries attributable to Mississippi comprised less than 1 percent of the total value of Comcast's subsidiaries during the tax years at issue.

2

Comcast's business of providing cable or cable-related services in Mississippi, and otherwise have no connection with Mississippi.

¶4. Comcast filed Mississippi Corporate Income and Franchise Tax Returns for the 2008, 2009, and 2010 tax years. In calculating its capital base for each year, Comcast excluded certain amounts of capital utilizing the holding-company exclusion located on Line 8 of the Mississippi Corporate Franchise Tax Schedules. For the amounts that it excluded on the 2009 and 2010 Mississippi Corporate Franchise Tax Schedules, Comcast attached its calculations used to arrive at these amounts through documentation labeled "Mississippi Holding Company Exclusion - 2009 Tax Year" and "Mississippi Holding Company Exclusion - 2010 Holding Company Exclusion - 2010 Tax Year."

¶5. In calculating its apportionment ratios for each tax year, Comcast combined the net book value of its Mississippi real and tangible personal property owned at year end with its Mississippi gross receipts and then divided this total by the combination of its everywhere counterparts. Comcast did not include in its apportionment ratios all of Mississippi destination sales as gross receipts in the numerator of the apportionment factor. The application of these apportionment ratios to Comcast's reported total capital bases for the respective tax periods resulted in the taxable capital being apportioned to Mississippi and the corporate franchise tax due for Comcast.

¶6. In July 2012, the MDOR commenced an audit of Comcast's Corporate Income and Franchise Tax Returns for 2008, 2009, and 2010. At the conclusion of the audit, the MDOR determined that Comcast owed additional corporate franchise tax. Specifically, the MDOR

found that Comcast's preapportioned capital base and its Mississippi apportionment ratios should be increased for each applicable year. The increase in Comcast's capital base was attributable to the MDOR's disallowance of the holding-company exclusion. The increase in Comcast's Mississippi apportionment ratios was attributable to MDOR's inclusion of all of Comcast's Mississippi destination sales as gross receipts. The application of the audited apportionment ratios to the audited capital base resulted in additional taxable capital apportioned to Mississippi for each year, with a corresponding increase in franchise tax due for each year. The MDOR formally issued its assessment against Comcast on December 5, 2014. A detailed list of the calculations and assessments is attached to this opinion as Exhibit A.

¶7. Comcast timely appealed the MDOR's assessment to the MDOR's Board of Review. The Board of Review upheld the assessment.

¶8. Comcast timely appealed the Board of Review's order to the Mississippi Board of Tax Appeals (BTA). At the hearing before the BTA, Comcast argued that the MDOR's franchise-tax assessment did not accurately reflect the true value of its capital employed in Mississippi. Specifically, Comcast argued (1) that capital related to investments in its non-unitary subsidiaries should be excluded from its preapportioned franchise-tax capital base, (2) that it could apply factor representation to a divided capital base, and (3) that it could use the apportionment factors, i.e., the gross receipts or sales as well as the real and personal property, of its unitary subsidiaries in the apportionment formula. Comcast presented four alternative franchise-tax computations. The BTA considered those alternatives and

4

specifically determined that one alternative, referred to as the factor-representation method, "show[ed] that the [MDOR] seeks to tax over 340% more out-of-state value than allowed" and "result[ed] in a distortion in favor of the state by over-attributing income to the state."

¶9.     The BTA found that Comcast had "met its burden of proof to overcome the presumption of the correctness of the [MDOR]'s assessment." Specifically, the BTA found "substantial credible evidence" that the tax assessment was distortive and did not fairly represent the true value of Comcast's capital in Mississippi. As a result, the BTA reduced Comcast's corporate franchise-tax assessment for the 2008, 2009, and 2010 tax years.

¶10.     The MDOR timely appealed the BTA's order to the chancery court. The MDOR and Comcast filed competing motions for summary judgment. After a hearing, the chancellor found that Comcast's motion for summary judgment was well taken. The chancellor granted Comcast's motion for summary judgment and dismissed with prejudice the MDOR's petition appealing the BTA's order.

¶11.     The MDOR timely appealed the chancellor's order to this Court. On appeal, the MDOR argues (1) the chancellor applied an incorrect standard of review, (2) Comcast does not qualify for an exclusion under the franchise-tax statutes, and the franchise-tax statutes do not permit Comcast to use an alternative apportionment method, and (3) Comcast's constitutional claims are not properly before the Court and are therefore barred.

**STANDARD OF REVIEW**

¶12.     Issues related to tax appeals are questions of law, which are reviewed by this Court de novo. *Miss. Dep't of Revenue v. Hotel and Rest. Supply*, 192 So. 3d 942, 945 (Miss.

5

2016). "Further, '[a] de novo standard is applied when the Court reviews a chancery court's grant or denial of summary judgment.'" *Id.* (alteration in original) (quoting *Miss. Dep't of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192, 1194 (Miss. 2014)).

## ANALYSIS

I.      *Whether the chancellor applied an incorrect standard of review.*

¶13.    Under Mississippi Code Section 27-77-7(5) (Rev. 2010) (held unconstitutional by *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668 (Miss. 2020)),[3]

> [T]he chancery court shall give deference to the decision and interpretation of law and regulations by the Department of Revenue as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised. Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.

¶14.    "Mississippi Code Section 27-77-7(5) provides the process and standard of review for chancery court review of MDOR and []BTA decisions, and issues related to such are

---

[3] Section 27-77-7(5) was amended effective January 1, 2015. *See* H.B. 799, Reg. Sess., 2014 Miss. Laws ch. 476, § 17. But House Bill 799 contained a savings clause, which states in pertinent part,

> The provisions of the laws relating to the . . . judicial review of such actions which were in effect prior to the effective date of this act are expressly continued in full force, effect and operation for the purpose of providing . . . judicial review of any assessment . . . where the initial date of said assessment . . . is before the date on which this act becomes effective.

H.B. 799, Reg. Sess., 2014 Miss. Laws ch. 476, § 19. Because the assessment at issue in this case occurred before January 1, 2015, the amendments to Section 27-77-7(5) do not apply to the chancery court's judicial review. *Robinson v. Morgan*, 214 So. 3d 188, 189-90 (Miss. 2017).

6

questions of law." *Hotel & Rest. Supply*, 192 So. 3d at 945 (citing *Equifax, Inc. v. Miss. Dep't of Revenue*, 125 So. 3d 36, 41 (Miss. 2013)). "As customary, questions of law are reviewed de novo." *Id.* (citing *Equifax*, 125 So. 3d at 41).

¶15.　In its order granting summary judgment, the chancellor found as follows:

> Mississippi Code Annotated §27-77-7(5), as it existed at all times relevant to this appeal, sets forth the standard of judicial review for decisions of the BTA:
>
> > Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.
>
> Miss. Code Ann. § 27-77-7(5) (2010). In order to be entitled to reversal of the BTA decision, Petitioner MDOR "must raise and prove one or more of the following: the agency's decision was unsupported by substantial evidence, the agency's decision was arbitrary and capricious, the agency's decision was beyond the power of the administrative agency to make, and/or the agency's decision violated the complaining party's statutory or constitutional right." *Equifax, Inc. v. Mississippi Dep't of Rev.*, 125 So. 3d 36, 41 (Miss. 2013) (citing *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (Miss. 2010). *See also* Miss. Code Ann. §27-77-7(5). As an administrative appeal, this Court must limit its analysis to determining whether MDOR has proven that it is entitled to reversal of the BTA decision for any of these four legal bases prescribed for reversing an agency decision.

¶16.　The MDOR argues that the chancellor applied an incorrect standard of review under Section 27-77-7. The MDOR asserts that "[t]he standard of review applied by the [c]hancellor gives deference to the BTA in contradiction to Miss. Code Ann. § 27-77-7 and this Court's precedent." According to the MDOR, "[b]y requiring that [the MDOR] prove that the BTA had violated the *Buffington* tenets, the [c]hancellor erroneously gave deference to the BTA."

¶17. The MDOR asserted a similar argument in **Hotel & Restaurant Supply**. *Id.* at 944-45. This Court explained that

> [a]n agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed de novo, but with great deference to the agency's interpretation . . . . *However, if an agency's interpretation is contrary to the unambiguous terms or best reading of a statute, no deference is due. An agency's interpretation will not be upheld if it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.*

*Id.* at 946 (quoting **Buffington**, 43 So. 3d at 453-54). This Court concluded that "the issue of deference . . . is of no moment because MDOR's interpretation of the underlying statutes still is reviewed de novo, as it is a matter of law." *Id.* (citing **Buffington**, 43 So. 3d at 453-54).

¶18. As in **Hotel & Restaurant Supply**, the MDOR's assertion that the chancellor erroneously gave deference to the BTA is "of no moment" because the MDOR's interpretation of the applicable franchise tax statutes is reviewed de novo. *Id.*

> II. *Whether the franchise-tax statutes allow Comcast to exclude from its capital base the investments in its subsidiaries and to use an alternate apportionment method.*

¶19. Comcast argues that under the Mississippi franchise-tax statutes, it was "permitted to exclude the capital value and apportionment factors attributable to its non-unitary subsidiaries, and to include the apportionment factors of its unitary subsidiaries for purposes of computing the true value of its capital in Mississippi." The MDOR, on the other hand, argues that the Mississippi franchise-tax statutes do not provide Comcast with an exclusion and do not provide the use of an alternative apportionment method.

8

## A. Capital Base

¶20. Under Mississippi Code Section 27-13-9(1) (Rev. 2010),[4] "[t]he tax imposed, levied and assessed . . . shall be calculated on the basis of the capital employed in this state . . . , measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings . . . ." Comcast argues that the MDOR's franchise-tax assessment does not reflect the true value of Comcast's capital employed in Mississippi because it erroneously included the value of Comcast's non-unitary subsidiaries in Comcast's capital base.

¶21. But Section 27-13-9(1) specifically states that "[t]here shall not be any exclusion of capital by a corporation relating to the stock of another corporation . . . ." Miss. Code Ann. § 27-13-9(1). Indeed,

> [t]he express language of the franchise tax statutes provides no exemptions for the retained earnings of a subsidiary. The intent of the legislature to include the assets of a subsidiary corporation in the parent corporation's franchise tax base was made clear by the amendment in 1988 of Miss. Code Ann. § 27-13-9. To that statute was added the statement that "[t]here shall not be any exclusion of capital by a corporation relating to the stock of another corporation." Miss. Code Ann. § 27-13-9 (1994 Supp.).

***Tower Loan of Miss., Inc. v. Miss. State Tax Comm'n***, 662 So. 2d 1077, 1084 (Miss. 1995).

¶22. Mississippi Code Section 27-13-9(2) (Rev. 2010) provides an exception to the inclusion of a subsidiary's assets in the corporation's franchise tax base. Under Section 27-13-9(2), "[i]n the case of a holding corporation, the value of the capital used, invested or employed in this state shall exclude that portion of the book value of the holding corporation's investment in stock or securities of its subsidiary corporation . . . ." But

---

[4] The parties agree that the franchise-tax statutes in effect during the tax years at issue apply to this case.

9

Comcast admittedly does not qualify for the holding-company exclusion.[5]

¶23.    Having failed to meet the exception under Section 27-13-9(2), Comcast argues that it is entitled to exclude its investment in its non-unitary subsidiaries under Mississippi Code Section 27-13-11 (Rev. 2010).  Under Section 27-13-11,

> For the purpose of determining the amount of capital, as defined in Section 27-13-9 . . . , the book value of the accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct, except where the commissioner determines that the book value does not properly reflect capital employed in this state and in that situation the commissioner's determination of capital shall be prima facie correct.
>
> If any organization has cause to believe that the calculations required on the return prescribed are not sufficiently informative or do not properly reveal the true franchise or excise tax to be due as measured by the value of the capital of that organization, or shall feel aggrieved at the requirements upon it for information or tax, then such organization shall have the right to file with the commissioner a petition and affidavit signed as returns are by this chapter required to be signed, setting forth the facts showing the true value of its capital.

Miss. Code Ann. § 27-13-11.  Relying on Section 27-13-11, Comcast asserts that it has the right to present evidence setting forth the facts showing the true value of its capital.  This Court agrees.

¶24.    As noted by the BTA, under Section 27-13-11, the MDOR's determination of capital is prima facie correct.  But such a presumption of correctness can be overcome.  Miss. Code Ann. § 27-13-11.  Section 27-13-11 contemplates that a taxpayer, "for any number of reasons, might maintain its financial records in a manner that would not fairly reflect its capital structure consistent with the spirit of the taxing law."  ***Miss. Power & Light Co. v.***

---

[5] Comcast filed its subject tax returns electing the holding-company exclusion, but it later acknowledged that it did not qualify for such exclusion.

*Miss. State Tax Comm'n*, 704 So. 2d 1343, 1344 (Miss. 1997). As a result, Section 27-13-11 allows a taxpayer to set forth facts "showing the true value of its capital" when it believes MDOR's computations "do not properly reveal the true franchise . . . tax to be due . . . ." Miss. Code Ann. § 27-13-11.

¶25. Here, as determined by the BTA, Comcast has overcome the presumption of correctness of the MDOR's franchise-tax assessment. The record shows that by including the value of Comcast's non-unitary subsidiaries in Comcast's capital, the MDOR's computation included billions of dollars in non-unitary assets in Comcast's tax base. These assets represented passive, non-unitary investments with no connection to Comcast's business in Mississippi. The value of Comcast's non-unitary subsidiaries is not "capital employed in the state" nor is it "business that is actually being done or carried on in Mississippi." Miss. Code Ann. § 27-13-9(1); s*ee also Miss. State Tax Comm'n v. Chevron U.S.A., Inc.*, 650 So. 2d 1353, 1357-58 (Miss. 1995) ("A franchise tax is a tax generally measured by capital for the privilege of doing business in the state. In other words, a company is taxed on business that is actually being done or carried on in Mississippi."). Because these non-unitary subsidiaries have no connection to Comcast's business in Mississippi, it was error to include Comcast's investments in them in its franchise-tax base.

¶26. The MDOR asserts that Section 27-13-9 "provides the sole exclusions from a taxpayer's capital base" and that Comcast "does not qualify for any exclusion provided for under [Section] 27-13-9." But such a strict interpretation of Section 27-13-9 ignores Section 27-13-11, which allows a taxpayer to "set[] forth the facts showing the true value of its

11

capital" when "the calculations required on the return . . . are not sufficiently informative or do not properly reveal the true franchise . . . tax to be due as measured by the value of the capital of that organization . . . ." Section 27-13-9 must yield to Section 27-13-11 when it produces an assessment that "do[es] not properly reveal the true franchise . . . tax to be due . . . ." Miss. Code Ann. § 27-13-11.

### B. Apportionment Method

¶27. Mississippi Code Section 27-13-13(1) (Rev. 2010) provides the apportionment method to be used for franchise tax determination:

> In the case of organizations doing business both within and without Mississippi, the value of capital employed in this state shall be determined by first computing the ratio between (1) the real and tangible personal property owned in Mississippi and gross receipts from business carried on in Mississippi, and (2) the total real and tangible personal property owned and gross receipts wherever located and from wherever received. Said ratio then shall be applied to the total capital stock, surplus, undivided profits and true reserves and the result of that application shall be the capital employed in this state.

Miss. Code Ann. § 27-13-13(1).

¶28. Comcast argues that the MDOR's computation of Comcast's capital was erroneous because it failed to account for the apportionment factors, i.e., the gross receipts/sales and property, of its unitary subsidiaries. Stated differently, Comcast does not dispute that its capital invested in the unitary subsidiaries was properly included in its tax base, but it maintains that the capital was not fairly apportioned because the statutory apportionment formula applied by the MDOR failed to account for the receipts and property of the unitary subsidiaries. Comcast asserts that the MDOR's failure to account for the apportionment

12

factors of its unitary subsidiaries "created an inherent mismatch between the values and the factors used to compute [Comcast]'s Mississippi franchise liability." Comcast explains that "[s]uch a mismatch does not reflect a rational relationship between the values being taxed and the activities giving rise to the values, and results in distortion in favor of the State by over-attributing income to the State."

¶29. In support of its argument that the sales and property factors of its unitary subsidiaries should be included in the apportionment method used to determine its capital, Comcast, once again, relies on Section 27-13-11. While Comcast acknowledges that Section 27-13-13 is the "applicable computation to determine 'capital employed in the state,'" it asserts that Section 27-13-11 allows it to deviate from the statutorily prescribed apportionment method when the value does not properly reflect capital employed in this state. This Court agrees.

¶30. Section 27-13-11 allows a taxpayer to set forth facts showing the true value of its capital when the calculations "do not properly reveal the true franchise . . . tax to be due as measured by the value of the capital of that organization . . . ." Miss. Code Ann. § 27-13-11. As noted by the BTA, Comcast presented four alternative franchise-tax computations to show that the MDOR's tax assessment was distortive. While the BTA considered all four alternatives, it focused on one, the factor-representation method.

¶31. The factor-representation method was recognized by this Court in *Ashland Pipe Line Co. v. Marx*, 623 So. 2d 995 (Miss. 1993). In *Ashland*, Ashland was incorporated under the laws of Ohio, had its commercial domicile in Kentucky, and carried on business activities in Mississippi. *Id.* at 997. The commission audited Ashland's books and discovered that

13

Ashland excluded dividend income from two of its subsidiaries in determining taxable income for Mississippi. *Id.* The commission included the dividends paid by its subsidiaries in its income-tax base but excluded the subsidiaries' apportionment factors in the computation of its apportionment method. *Id.* Ashland objected and argued that such a method was not authorized by law. *Id.*

¶32. This Court found that Ashland failed to meet its burden of proof because it did not provide any evidence in support of its contention. *Id.* But, as Comcast asserts, the Court "set forth a road map for taxpayers seeking to assert [a] similar challenge[]." Specifically, the Court stated,

> Ashland did not provide the lower court with a tax assessment applying the factors of the subsidiaries. It is evident that this would be required to show that a disproportionate assessment resulted from application of the Commission's formula. *The only way for Ashland to show a disproportionate result would be to compare the assessment as computed by the Commission and the assessment including all of the factors of the subsidiaries.*

*Id.* at 1004 (emphasis added).

¶33. Although *Ashland* involves corporate-income tax, not franchise tax, the overall result is the same. *Ashland* demonstrates that while the taxpayer may ultimately fail to meet its burden, the taxpayer is not precluded from presenting evidence to show that the tax assessment is unreasonable.

¶34. Here, as noted by the BTA, Comcast presented evidence that the MDOR's tax assessment was unreasonable. Indeed, as the Court in *Ashland* instructed, Comcast compared the MDOR's assessment to Comcast's assessment including the factors of its subsidiaries. Using the factor-representation method, which included the apportionment

14

factors of its subsidiaries, Comcast showed that the MDOR sought to tax more than 340 percent out-of-state value than allowed.[6]

¶35.    The MDOR's assessment disregarded the receipts and property of Comcast's subsidiaries from the computation of Comcast's apportionment forumla even though those very same subsidiaries comprised between 77 percent and 80 percent of Comcast's total asset value during the years at issue.[7]  As the BTA noted, this created an inherent mismatch between the value and the factors used to compute Comcast's Mississippi franchise-tax liability.  Such a mismatch does not reflect a rational relationship between the values being taxed and the activities giving rise to the value.  As a result, the MDOR's assessment resulted in a distortion in favor of the state by overattributing income to the state.

¶36.    The Mississippi franchise-tax statutes were designed to impose a franchise tax on the value of the capital employed in this state and to provide a standard method for computing

---

[6] Comcast provided the following calculations showing the difference between the capital value assessed by Comcast using the factor-representation method versus the capital value assessed by the MDOR:

|  | 2008 | 2009 | 2010 |
|---|---|---|---|
| Factor-Representation Method | $171,615,836 | $171,360,910 | $175,466,481 |
| MDOR Assessment | $589,356,265 | $604,526,421 | $611,456,216 |
| MDOR Assessment as a % of Factor-Representation Method | 343% | 353% | 348% |

[7] Regarding the 77 percent to 80 percent figures, Comcast explained as follows:

|  | 2008 | 2009 | 2010 |
|---|---|---|---|
| Book value of Comcast's subsidiaries | $20,012,364,755 | $19,416,119,639 | $20,932,774,420 |
| Book value of Comcast's total assets | $25,970,604,878 | $24,616,810,284 | $26,065,282,723 |
| Value of subsidiaries as a % of total assets | 77% | 79% | 80% |

15

that capital. Miss. Code Ann. §§ 27-13-9(1), 27-13-13. But the franchise-tax statutes also provide a statutory-relief mechanism that can be utilized by a taxpayer when the standard method produces a distortive or an unreasonable result. Miss. Code Ann. § 27-13-11. This Court agrees with the BTA and the chancellor that Comcast has shown that the MDOR's tax assessment produced a distortive or an unreasonable result and did not fairly represent the true value of Comcast's capital employed in Mississippi. Comcast demonstrated under Section 27-13-11 that its capital base and apportionment factor should be modified. Accordingly, the chancellor's entry of summary judgment in favor of Comcast should be affirmed.

> III.   *Whether federal constitutional limitations require the MDOR's assessment to be invalidated.*

¶37.   In its appellee's brief, Comcast asserts "an alternative basis for upholding the [BTA's and chancellor's] decisions." Specifically, Comcast asserts that "the federal constitutional limitations imposed by the due process and interstate commerce clauses of the U.S. Constitution require the MDOR's assessment to be invalidated." In response, the MDOR asserts that Comcast's constitutional argument is not properly before this Court and is therefore barred.

¶38.   Because Comcast has shown that the MDOR's tax assessment does not reflect the true value of Comcast's capital employed in Mississippi, it is unnecessary to consider Comcast's alternative argument of whether the assessment produced an unconstitutional result.

## CONCLUSION

¶39.   Based on our de novo review, this Court finds that the MDOR's tax assessment does

16

not fairly represent the true value of Comcast's capital employed in Mississippi. As a result, the chancellor's dismissal of the MDOR's appeal of the BTA's order and his entry of summary judgment in favor of Comcast were proper. Accordingly, the chancellor's "order granting summary judgment and dismissing petition" is affirmed.

¶40. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

## EXHIBIT A

Comcast filed Mississippi Corporate Franchise Tax returns for the 2008, 2009, and 2010 tax periods.

Comcast excluded the following amounts of capital based on the holding-company exclusion:

2008 - $15,001,779,798.00[2]

2009 - $15,537,496,416.00[3]

2010 - $16,139,311,537.00[4]

As a result of this excluded capital, Comcast's total capital base was as follows:

2008 - $4,466,448,988.00[7]

2009 - $4,161,784,835.00[8]

2010 - $3,957,198,833.00[9]

Under the apportionment-ratio section, Comcast reported the net book value of its Mississippi Real and Tangible Personal Property and Everywhere Real and Tangible Personal Property as follows:

Mississippi Real and Tangible Personal Property

2008 - $80,283,917.00[10]

2009 - $86,730,211.00[11]

2010 - $80,562,619.00[12]

Everywhere Real & Tangible Personal Property

2008 - $2,847,300,674.00[13]

2009 - $2,961,855,591.00[14]

2010 - $2,704,531,428.00[15]

Under the apportionment-ratio sections, Comcast reported its Mississippi Gross Receipts and Everywhere Gross Receipts as follows:

Mississippi Gross Receipts

2008 - $33,626,978.0017

2009 - $34,360,670.0018

2010 - $30,351,379.0019

Everywhere Gross Receipts

2008 - $2,891,134,308.0020

2009 - $2,915,534,007.0021

2010 - $3,108,119,980.0022

Comcast arrived at the following overall apportionment ratios for each tax period by combining the net book value of its Mississippi Real and Tangible Personal Property Owned at Year End with its Mississippi Gross Receipts and then by dividing this total by the combination of its everywhere counterparts:

2008 - % 1.9851

2009 - % 2.0603

2010 - % 1.9081

The application of these apportionment ratios to Comcast's reported total capital bases for the respective tax periods resulted in the following taxable capital being apportioned to Mississippi, and the resulting corporate franchise tax due for Comcast:

Mississippi Apportioned Capital

2008 - $88,663,479.0026

2009 - $85,745,253.0027

2010 - $75,507,311.0028

Franchise Tax Due

2008 - $221,660.0029

2009 - $214,365.0030

2010 - $188,770.0031

The MDOR audited Comcast's corporate franchise-tax returns for the 2008, 2009, and 2010 tax periods. At the conclusion of this audit, the MDOR determined that Comcast owed additional corporate franchise tax, primarily due to the disallowance of the holding company exclusion. Through this disallowance, Comcast's respective capital bases increased to the following:

2008 - $20,032,503,905.0033

2009 - $20,373,632,423.0034

2010 - $20,810,571,644.0035

The MDOR likewise increased the capital-apportionment ratio by including all Mississippi destination sales as gross receipts in the numerator of the apportionment factor, and not through Comcast's methodology, as outlined below:

Audit Gross Receipts

2008- $86,281,902.0037

2009 - $84,063,677.0038

2010 - $85,860,631.0039

Through the increase in gross receipts identified above, Comcast's overall apportionment ratio increased to the following:

2008 - % 2.9420

2009 - % 2.9672

2010 - % 2.9673

The application of these audited apportionment ratios to Comcast's total audited

capital bases for the respective tax periods resulted in the following taxable capital being apportioned to Mississippi, and the resulting corporate franchise tax due for Comcast:

Mississippi Apportioned Capital

2008 - $589,356,265.0043

2009 - $604,526,421.0044

2010 - $611,456,216.0045

Franchise Tax Due

2008 - $1,251,733.0046

2009 - $1,296,953.0047

2010 - $1,339,873.0048